**People of the State of Illinois, Appellee, v. Lyle P. Osborne, Appellant.**

**Gen. No. 65–78M.**

Third District.

December 29, 1966.

Rehearing denied February 16, 1967.

Robert H. Jones, of Peoria, for appellant.

Bernard L. Oltman, State's Attorney of Tazewell County, of Pekin, for appellee.

STOUDER, J.

Defendant Appellant, Lyle P. Osborne, was charged in a criminal complaint with a violation of chap 95½, sec 6–303(a), Ill Rev Stats (1963), the offense of operating a motor vehicle after and while his privilege so to do had been suspended. Defendant was found guilty by the jury and this appeal follows from the judgment and sentence of the Circuit Court of Tazewell County.

Illinois State Trooper, John Kelsey testified that on July 11, 1964, between 7 and 7:30 p. m. he was traveling east on old state route 150. He observed an Oldsmobile, upon which there was no front Illinois license plate, traveling in the opposite direction. He made a 180-degree turn and followed such Oldsmobile and at a point about 350 feet from where the witness made his turn, the Oldsmobile made a left-hand turn from the highway into the parking lot of the B & H Welding Company. The witness followed such car into the parking lot stopping next to it and as Defendant was alighting from the car the witness honked his horn and requested the Defendant to come over to his car, there being no other person present on the parking lot at the time. During the ensuing conversation Defendant was asked for his Illinois Operator's License but instead of exhibiting such license the Defendant exhibited an application for a Missouri license, claiming that his Illinois license was somewhere in his Cadillac. Defendant accompanied the witness to the residence of Trooper Burns who lived nearby, the three of them then returning to the plant parking lot, stopping on the way to deposit the ticket and cash bail in a mailbox for transmission to the Clerk of the Circuit Court. On their return to the plant parking lot, Defendant searched through the trunk of his Cadillac for his Illinois license which he did not find. Upon their return to the plant parking lot, the witness observed Robert Osborne, brother of the Defendant, coming out of the plant. The Officer also testified that he had known Robert Osborne,

134

brother of the Defendant, prior to this incident but had not known Lyle Osborne and further that during the conversations which he had with Defendant, the latter did not at any time deny that he had been driving the Oldsmobile. Sometime later Trooper Kelsey learned, after inquiry through the office of the Secretary of State, that Defendant's license had been suspended and thereafter filed this criminal complaint. Trooper Burns, who also testified, corroborated Kelsey's testimony concerning that part of the occurrence during which he was present.

Defendant, in his own behalf, testified that he had been brought to work by his sister in a Chrysler at about noon on the day in question. He had not driven the Oldsmobile and the Oldsmobile had been driven on that day by his brother Robert, who at the time of the hearing was in a penitentiary. He had come out of the plant with a fellow employee to inspect the latter's new car when he was called over to the Trooper's car and was asked for his operator's license. He exhibited an application for a Missouri license and did state to the officer that he thought he had an Illinois license somewhere. He had gone with Trooper Kelsey to the residence of Trooper Burns and returned with them to the plant parking lot failing to deny his driving of the Oldsmobile because no one had asked and he did not know what the matter was about. Defendant also in his testimony admitted that his Illinois operator's license had been suspended and that the suspension was in effect on the day in question. He further testified that he was a resident of Missouri.

Several of Defendant's fellow employees, as well as other persons who claimed to have been at the welding plant at the time, testified in Defendant's behalf. Their testimony tended in part to corroborate Defendant's claim and tended to indicate that Lyle Osborne looked very much like his brother, Robert.

The People introduced three documentary exhibits, the first being a certification by the Illinois Secretary of

135

State as to the records in his office as of August 14, 1964, the second being the order of the Secretary of State suspending Defendant's license for a period of three months as a result of Defendant's conviction of three moving violations within a 12-month period, and the third being the notice of suspension sent to Defendant.

 Defendant argues that incompetent prejudicial evidence was admitted in behalf of the prosecution and that the Assistant State's Attorney committed reversible error in the cross-examination of Defendant. The incompetent evidence referred to is the admission into evidence of the documentary exhibits relating to the suspension of Defendant's license by the Secretary of State. Defendant argues that because the order of suspension recited his conviction of three moving violations within a period of twelve months his right to a trial limited to the offense charged was violated. Defendant, in arguing that the exhibits were improperly admitted, relies on the general rule that evidence is incompetent where it tends to show the commission of other offenses unrelated to the offense with which Defendant is charged. People v. Donaldson, 8 Ill2d 510, 134 NE2d 776. That such general rule is not necessarily applicable to this case is apparent from a consideration of the nature of the offense charged herein. The offense charged is not merely the driving of a motor vehicle in the absence of a license to do so but the driving of such vehicle while and after such license has been suspended. The fact of suspension is one of the essential elements of the offense as charged and must be proved by the People. It is a matter of common knowledge that suspension of a license to operate a motor vehicle must depend upon previous misconduct in the operation of a motor vehicle and we are not prepared to hold that spelling out the details of such previous misconduct in the proof of suspension should in and of itself constitute reversible error. In People v. White, 24 Ill App2d 324, 164 NE2d 823, the

court in upholding the conviction of the Defendant for driving a motor vehicle after his license had been revoked, approved the admission into evidence of the authenticated copy of the order of the Secretary of State revoking Defendant's license, said order reciting that the license had been revoked on account of Defendant's conviction of driving while intoxicated. While the decision in the White case was predicated upon the type of evidence necessary to prove a suspension, the fact that the evidence approved contained a recital of the grounds for suspension by implication found no error in such inclusion.

■■■■ The Defendant testified in his own behalf. During his cross-examination by the Assistant State's Attorney the Defendant was asked "Q. Mr. Osborne, have you ever been in a penal institution in this state?" Defense counsel immediately objected and after a conference outside the presence of the jury the question was withdrawn and the judge instructed the jury to disregard it. The matter was not thereafter mentioned either in argument or by way of illusion or insinuation. It is a well settled rule that the testimony of the Defendant may be impeached by evidence of his prior conviction of an infamous crime. Introduction of the record of conviction is the proper method of impeaching the testimony of a Defendant and such fact cannot be established by cross-examination. People v. Halkens, 386 Ill 167, 53 NE2d 923. The People concede that the question was improper but argue that the prompt objection to the question, its withdrawal and the court's order to disregard the question obviated any resulting prejudice to the Defendant. The question before us is not whether or not error was committed but rather whether or not under the circumstances the error warrants reversal of the conviction. We have considered such cases as People v. Halkens, 386 Ill 167, 53 NE2d 923, People v. Decker, 310 Ill 234, 141 NE 710, People v. Kosearas, 408 Ill

179, 96 NE2d 539, People v. Black, 317 Ill 603, 148 NE 281 and People v. Garines, 314 Ill 413, 145 NE 699, wherein convictions were reversed for errors including those relating to improper impeachment of the testimony of the Defendants. Such cases are of little assistance since the method of impeachment employed was substantially different than the problem created in the instant case and because other substantial errors existed. The only cases we have been able to find in which improper impeachment of the Defendant's testimony was the sole basis for reversing a conviction are People v. Flynn, 8 Ill2d 116, 133 NE2d 257 and People v. Flynn, 8 Ill2d 133, 133 NE2d 259. In the first case a conviction for armed robbery was reversed wherein it appeared that the Defendant was asked on cross-examination whether he had ever been convicted of a felony. After his affirmative reply defense counsel's objection was overruled and the State's Attorney was then permitted to inquire into the prior offense. In the second case a conviction for larceny was reversed wherein it appeared that the Defendant was asked on cross-examination whether he had ever told a police officer he had been in a penitentiary, to which Defendant replied that it didn't matter. Defendant was also asked whether he had in fact been in the penitentiary, and whether the conviction had been for robbery or larceny, to which question Defendant did not respond. No objections were interposed by defense counsel to this line of questioning and the trial court made no rulings thereon. It is evident from the opinions in the two Flynn cases that the evidence or improper suggestion of prior criminal misconduct was significant and its only possible effect was to improperly and prejudicially inform the jury of prior criminal offenses. In the instant case the jury was not so informed and although we condemn the practice of even asking such a question we believe from a consideration of the incident itself as well as

from the record as a whole, that the jury's verdict could not have been and was not affected by such question.

■ ■ Defendant next contends that the trial judge exhibited a hostile attitude thereby depriving Defendant of a fair and impartial trial. Defendant relies upon a single incident which took place during the cross-examination of one of Defendant's witnesses. In response to an objection by counsel for Defendant to a question which had been asked several times and to which question the witness' answer had not been responsive the court said, "Mr. Jones, the question is simple. The court believes the witness is being evasive about answering it." Defense counsel then moved for a mistrial which motion was denied. Defendant now contends that this remark of the judge had the effect of discrediting the entire testimony of the witness thereby prejudicing Defendant, relying on People v. Melnick, 263 Ill 24, 104 NE 1111, People v. Marino, 414 Ill 445, 111 NE2d 534, and People v. Tyner, 30 Ill2d 101, 195 NE2d 675. We do not believe that the cases relied upon by Defendant are applicable to the instant case since in each of them the voluntary declaration of the judge in effect accused the witness of lying. A judge should refrain from suggesting his opinion on the credibility of the testimony presented. The single remark of the judge was mildly admonitory rather than hostile in character and was justified by the previous unresponsive answers of the witness. People v. Kukulski, 358 Ill 601, 193 NE 504. Such a remark is not susceptible of the interpretation insisted upon by the Defendant that the court sought to discredit the witness before the jury. People v. Bartz, 342 Ill 56, 173 NE 779.

■ Lastly we consider Defendant's contention that the court erred in giving certain of the People's instructions. People's instruction 7 informed the jury in the statutory language of sec 6–209, chap 95½, Ill Rev Stats (1963) concerning the duty of the Secretary of

139

State to notify a licensee of the suspension or revocation of privileges to operate a motor vehicle and the duty of the licensee to surrender his license. People's instruction 9 informed the jury in the language of sec 6–122, chap 95½, Ill Rev Stats (1963) that it was the duty of a licensee to notify the Secretary of State of any change in address. Defendant's principal objection to People's instructions 7 and 9 is that they refer to offenses other than the offense charged in the complaint. From the evidence the issue which the jury was called upon to decide was whether or not the Defendant was driving the Oldsmobile at the time and place in question, Defendant having conceded the suspension of his Illinois license. We do not believe that the instructions in any way confused the jury or prevented appropriate consideration of the issue involved there being ample evidence to support the instructions. Defendant has objected to other instructions given in behalf of the People but we find no merit in such objections and they do not require discussion.

Finding no error in the judgment of the Circuit Court of Tazewell County judgment affirmed.

Judgment affirmed.

ALLOY and CORYN, JJ., concur.