THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v*. CHARLES R. THORNHILL, Defendant-Appellant.

(No. 57394;

First District (2nd Division)—April 29, 1975.

James D. Montgomery and Diane M. Kinnard, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., John F. Brennan, and Richard H. Robinson, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

Convicted by a jury of the crime of aggravated battery[1], defendant Charles R. Thornhill was sentenced to a prison term of 2 to 5 years. He now appeals from that conviction, presenting the following issues for review: (1) whether the State unconstitutionally employed peremptory challenges to exclude blacks from the jury; (2) whether the remarks and conduct of the trial judge invaded the province of the jury and deprived defendant of a fair trial; (3) whether the evidence presented was sufficient to prove defendant guilty beyond a reasonable doubt of the offense charged; and (4) whether the trial court abused its discretion when it denied defendant's application for probation.

At approximately 8 a.m., on June 29, 1969, Officer James McEnroe of the Chicago Police Department stopped defendant for making a "U-turn" at the intersection of 101st and Halsted Streets in Chicago. The officer testified and defendant admitted that, while the officer sat in his squad car writing a citation for the "U-turn," defendant reached into the open window and grabbed his driver's license from the officer.

The testimony offered by the witnesses for the prosecution and the defense concerning the events which followed are in direct conflict.

---

[1] Ill. Rev. Stat. 1967, ch. 38, par. 12—4(b)(6).

Officer McEnroe testified that defendant not only grabbed his driver's license but also took the officer's ticket book. The officer then exited from his car, caught defendant by the arm, and warned defendant he would be in more trouble if he did not return the book. Defendant nonetheless pulled away from the officer's grip. The officer took hold of defendant once again. Defendant then turned, grabbed the officer and began pushing him. The officer tripped, fell on his back, got up and went to his squad car to radio for assistance. When Officer McEnroe returned to defendant's car, he opened the car door whereupon defendant got out from the car holding a baseball bat in his hand which he began to swing at the officer. Although the witness tried to protect himself, defendant hit him in the chest with the bat. The officer was able to force defendant over to the squad car where he told defendant to place his hands on the car. He was about to handcuff him when defendant turned and struck the officer in the mouth. The two men began pushing one another, fell to the ground and, at this point, the officer stated, defendant began to choke him. Officer McEnroe next remembered leaning against the squad car and watching the other officers, who had arrived in the interim, struggle with the defendant.

Also testifying on behalf of the State were two additional Chicago police officers. The first was Frank Malis who testified that about 1 minute after receiving a radio call at 10 minutes to 8 in the morning, he arrived at the scene and observed defendant with an arm around McEnroe's neck as he struck the officer in the head with the other fist; that Malis then handcuffed the defendant; that he saw no one strike the defendant; that McEnroe looked pale and dazed; and that he observed no blood either on the defendant or on the street.

The second officer, William Marcy, Jr., testified that when he arrived at the scene he saw four to eight policemen holding the defendant on the ground; that afterwards the defendant was handcuffed and placed in a squadrol; that McEnroe looked pale and his uniform looked dirty; that the defendant had blood on his face; that there was blood on the ground; and that he saw no one strike the defendant.

The defendant testified that he got out of his car to speak to Officer McEnroe; that he asked for a "pass" since he was unfamiliar with the area; that McEnroe stated that "black people are always asking for a break or a pass," at which point he reached into the squad car and grabbed his license; and that, as he walked from the squad car to his own auto, McEnroe grabbed him by the shoulder, flung him around against the car, knocked him to the ground and began to hit him. Defendant then covered his face, tried to turn over and next remembered "a lot of feet and hands dragging and kicking on me," and then being

turned over facedown, handcuffed, put into a squadrol and taken to the station. Defendant denied the alleged assault of McEnroe and further stated that, as a result of the incident, he sustained bruises on his face, hands, chest, stomach and legs, as well as skin abrasions on his eye and forehead.

Of the seven remaining defense witnesses, two claimed to have observed the incident from its outset. Neither witness had known the defendant previously, and each witness's account of the event coincided in its significant parts with that of defendant, i.e., it was the officer who had initiated the physical violence, and that defendant never struck any of the policemen but was hit repeatedly by them. The testimony of defendant's girl friend and her daughter who were passengers in defendant's auto also corroborated his version of the incident.

Three of the defendant's witnesses had not seen the incident from the beginning but testified as to various phases of the events, e.g., six police officers striking a man on the ground, one officer kicking the defendant, blood on the defendant and street, and the defendant's torn clothing. Additionally, two of the witnesses testified that one of the officers took a baseball bat from the back seat of the defendant's car and placed it in the squad car. The two passengers in the defendant's car corroborated certain portions of the defendant's testimony.

## I.

Defendant, a black person, contends that blacks were systematically excluded from the petit jury by the State's use of its peremptory challenges, and that such conduct constituted a denial of equal protection of the laws in violation of the fourteenth amendment of the United States Constitution.

The police officer initially involved in defendant's arrest and the principal State witnesses were white. In the selection of the petit jury, the State exercised five peremptory challenges, of whom four were black. During the jury selection the defendant consistently objected to the State's use of each peremptory challenge. Defendant claims "the State exercised its peremptory challenges to exclude every black prospective juror from the jury panel, apparently because of race." On the other hand, the record does indicate that of two alternative jurors selected, one was black. The record further indicates that of the four blacks peremptorily challenged, their occupations were: truck driver, school teacher, factory worker, and a guard for the General Service Administration.

Section 115—4(e) of the Illinois Code of Criminal Procedure (Ill. Rev. Stat, 1971, ch. 38, par. 115—4(e)) provides that in cases of the type

involved here, each party is allowed ten peremptory challenges. A peremptory challenge is a right to challenge a certain number of jurors without showing any cause or reason, or inquiry into motives. As any trial attorney knows, a peremptory challenge is often exercised on a mere "hunch," and sometimes on the so-called sophisticated consideration of race, religion, nationality, employment, residence, and many other real or imaginary reasons.

The defendant states that "the systematic exclusion of blacks from a jury is a denial of equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution." (*Strauder v. West Virginia* (1879), 100 U.S. 303, 25 L.Ed. 664; *Eubanks v. Louisiana* (1958), 356 U.S. 584, 2 L.Ed.2d 991, 78 S.Ct. 970.) But neither *Strauder* or *Eubanks* touches the precise question raised here.

The supreme court considered this issue in *People v. Harris* (1959), 17 Ill.2d 446, 451, 161 N.E.2d 809, 811-12, and there concluded that:

> "The fact that the State's exercise of peremptory challenges resulted in excluding [blacks] from the petit jury did not deprive defendant of any constitutional right. [Citation.] The right of peremptory challenge is a substantial one which should not be abridged or denied. It may, by its very nature, be exercised or not exercised, according to the judgment, will or caprice of the party entitled thereto, and he is not required to assign any reason therefor. [Citation.]"

Reasoning in a similar fashion, the United States Supreme Court concluded in *Swain v. Alabama* (1965), 380 U.S. 202, 221, 13 L.Ed.2d 759, 773, 85 S.Ct. 824, 836, that the equal protection clause does not entitle a black American to a jury containing members of his own race, and that the Constitution of the United States does not require an examination of the prosecutor's reasons for the exercise of his challenge in any given case.

■■ In light of these decisions, defendant nonetheless attempts to distinguish the instant case by suggesting that the phrase in the *Harris* opinion, "according to the judgment, will or caprice of the party entitled" does not mean that "the State, as it did in this case, may hide behind the cover of peremptory challenges in order to effect the deprivation of a constitutional right." Defendant, in his brief or in oral argument, cited no authority to support this contention. We have found no authority to extinguish the longstanding principle that the right to a peremptory challenge may be exercised without explanation or without being subject to control by the court. Accordingly, we conclude that the State used its peremptory challenges properly. *People v. Fort* (1st Dist. 1971), 133 Ill. App.2d 473, 481-82, 273 N.E.2d 439, 444-45.

## II.

Defendant next contends that certain comments made by the trial judge invaded the province of the jury and deprived defendant of a fair trial.

During the course of Collins B. Lewis's testimony (a witness for the defense), the following dialogue took place:

> "MR. MONTGOMERY: All right, what was the officer doing at that time?
>
> MR. LEWIS: I took for granted * * *
>
> MR. KELLY: Objection to what he took for granted.
>
> THE COURT: Sustained. Just a minute, answer the question put to you without putting your own editorials.
>
> MR. MONTGOMERY: I would ask your Honor not to rebut the witness.
>
> THE COURT: The witness is going off base. The jury is instructed to disregard the last testimony.
>
> MR. MONTGOMERY: I ask the jury to disregard * * *
>
> THE COURT: I don't want conversation with this witness and you sit down." [2]

Defendant urges that these remarks conveyed to the jury the trial court's disbelief in the witness's testimony as well as his hostility toward Lewis, thereby invading the jury's function and depriving defendant of a fair trial.

Defendant fails to point out that, at defense counsel's request, the trial judge, after denying defendant's motion for a mistrial, made the following comments to the jury before the direct examination of Lewis continued.

> "The jury is instructed that the colloquy between the witness and myself is not to influence you to his credibility and the conversation that this court had with the State's attorney or with the defense counsel is not part of this case."

■■ Recognizing that the trial court has wide discretion in the conduct of a trial (*People v. Marino* (1953), 414 Ill. 445, 450, 111 N.E.2d 534, 537), we believe that in the instant case the court properly admonished the witness to confine his responses to the information requested and remedied any potential prejudice to defendant's case by his subsequent instruction to the jury. Additionally, when this single[3] incident is placed

---

[2] This last comment was directed to one Mr. Adams, apparently cocounsel for the defendant.

[3] We have been unable to find in the record, nor did defense counsel point out, any other similar incident.

within the context of a trial which has produced approximately 1,000 pages of transcribed record, it is difficult to envision how these few comments by the court could have substantially prejudiced the defendant's case. *E.g., People v. Osborne* (3rd Dist. 1966), 78 Ill.App.2d 132, 139, 223 N.E.2d 243, 247, rehearing denied (1967).

It should also be noted that as part of the instructions given to the jury, prior to their retiring to deliberate, the court gave to the jury an instruction describing the function of the court, the jury and counsel (IPI—Criminal 1.01) which, in part, covers this type of situation. After reviewing the testimony of witness Lewis in its entirety and the instructions given to the jury, we find no prejudicial error as the result of this occurrence.

## III.

Defendant strongly urges that the State failed to prove him guilty beyond a reasonable doubt in that (1) the testimony of the prosecution witnesses was improbable, unreasonable and unsatisfactory and (2) the jury's verdict was palpably contrary to the weight of the evidence.

In support of his first point, defendant cites *People v. Coulson* (1958), 13 Ill.2d 290, 149 N.E.2d 96, wherein our supreme court reversed the convictions of two defendants because the State's evidence was improbable, unconvincing and completely unsatisfactory. The cornerstone of that decision was the fact that the evidence presented by the State was not credible to the extent that it was "contrary to the laws of nature, or universal human experience * * *." (13 Ill.2d 290, 297, 149 N.E.2d 96, 99.) When such is the case the court concluded that a reviewing court is not bound to believe the witness—regardless of the general rule that a reviewing court will not substitute its judgment for that of the jury—because "[i]f a conviction is to be sustained, it must rest on the strength of the People's case and not on the weakness of the defendant's case." 13 Ill.2d 290, 296, 149 N.E.2d 96, 99.

■■ While in the case at bar there is no question but that the State's version of the incident directly contradicts the version presented by the defense, that, in itself, does not render the State's evidence insufficient to support a conviction. (*People v. Brown* (1972), 52 Ill.2d 94, 106, 285 N.E.2d 1, 8.) Officer McEnroe's account of the incident established the necessary elements of the State's case (Ill. Rev. Stat. 1971, ch. 38, par. 12—4) and was corroborated, in part, by the testimony of Officer Malis. The jury had the duty to decide between the conflicting testimony. We find nothing in the two versions that is so contrary to the laws of nature or human experience as to make the State's case unworthy of belief. Even if this court might conclude from a reading of the transcript

that the defense witnesses were equally as, or even more, credible in their interpretation of the incident, the rule of law remains that the testimony of even one witness, if positive and credible, is sufficient to convict even though it is contradicted by the accused. (*People v. Novotny* (1968), 41 Ill.2d 401, 411, 244 N.E.2d 182, 188, rehearing denied (1969); *People v. Sevastos* (2nd Dist. 1969), 117 Ill.App.2d 104, 108-109, 252 N.E.2d 745, 747; *People v. Abrams* (1st Dist. 1974), 21 Ill.App.3d 734, 742, 316 N.E.2d 5, 12.) We think there is ample evidence to support the jury's verdict.

## IV.

Finally defendant argues the trial court abused its discretion by denying the defendant's application for probation. In support of this contention defendant brings to this court's attention the fact that he received an honorable discharge after having served in the United States Marine Corps; that he is a college graduate; that he had been an elementary school teacher; and that he has no prior criminal record. The defendant suggests that for the foregoing reasons, if this court were to affirm the conviction, this court "should [on the basis of these factors] use the authority granted it by Supreme Court Rule 615(b)(4) and reduce the punishment * * * to probation."

At the time defendant was sentenced, the applicable probation provision (Ill. Rev. Stat. 1971, ch. 38, par. 117—1) reads, in pertinent part, that:

"(a) A person who has been found guilty of any offense except a capital offense, the sale of narcotics, armed robbery or rape may be admitted to probation when it appears that:

(1) The defendant is not likely to commit another offense;

(2) The public interest does not require that the defendant receive the penalty provided for the offense; and

(3) The rehabilitation of the defendant does not require that he receive the penalty provided for the offense; and

(4) The defendant was not serving probation on a prior felony at the time he committed the offense, except for [specific offenses not relevant here]."

■■ The cardinal case on this issue is *People ex rel. Ward v. Moran* (1973), 54 Ill.2d 552, 301 N.E.2d 300, which held (1) there is no constitutional right to probation; (2) the decision as to whether to grant or to deny probation lies within the sound discretion of the trial court; (3) subsequent review by a reviewing court of that determination is limited to " '* * * ascertaining whether the trial court did, in fact, exercise discretion or whether it acted in an arbitrary manner.' [Cita-

tion.]"; (4) the 1970 Illinois Constitution does not authorize appellate courts to grant probation; and (5) that Supreme Court Rule 615 (Ill. Rev. Stat. 1973, ch. 110A, par. 615) "was not intended to grant a court of review the authority to reduce a penitentiary sentence to probation." 54 Ill.2d 552, 555-56, 301 N.E.2d 300, 301-302.

Thus, our review is to determine whether the trial court did, in fact, exercise discretion or whether it acted in an arbitrary manner. (*People v. Saiken* (1971), 49 Ill.2d 504, 514-15, 275 N.E.2d 381, 388, rehearing denied.) During the post-trial hearing on aggravation and mitigation, after both counsel had presented their respective arguments in a proper manner (defendant urging probation and the State recommending imprisonment of 2 years to 6 years), the following colloquy took place:

"THE COURT:  *  *  *  The police officer was not on trial. Mr. Thornhill was on trial.

He's now been convicted. Certainly, a man who flagrantly disregards the law himself, the mere snatching of that citation from that police officer is adequate in my mind to make certain, if I can, he should not teach school. He should not be a school teacher, Mr. Montgomery, if that's the way he teaches the law and—

MR. MONTGOMERY: That's not your job, to see he's not a school teacher, nor to make that judgment.

THE COURT: Nor am I making any judgment in that regard. But the argument here has been that he should not go to a prison because—

MR. MONTGOMERY: He's going to prison because he's a nigger who snatched his license from a white policeman. That's why he's going to prison. That's why it's recommended. Take all the icing off the cake, and that's what it is."

Shortly thereafter the court imposed the sentence of 2 to 5 years.

In our opinion both comments by defendant's counsel were uncalled for, improper, unprofessional and violative of the standards required of trial counsel. Mr. Montgomery's interruptions of the trial court's comments preceding the imposition of sentence brought no credit to counsel, the profession or to his client's cause.[4] The interruptions appear to have been made to impress the courtroom spectators and the client rather than to place proper matters before the court in mitigation of sentence. In addition, it is obvious that the remarks were more likely to trigger emotion rather than objectivity. However, the record indicates no action

---

[4] At oral argument before this court, Mr. Montgomery initiated the reference to this foregoing conduct, offered his obviously sincere regrets and vowed never again to engage in such conduct.

on the part of the trial court, exercising exemplary patience, to suggest that the sentence was the result of counsel's remark.

The statute in effect at the date of sentencing (Ill. Rev. Stat. 1967, ch. 38, par. 12—4(b)(6)) provided for a possible sentence of 1 to 5 years. The sentence imposed was 2 to 5 years. Unlike the vast multitude of defendants who are convicted of crimes involving physical harm, defendant at bar is possessed of an extensive formal education, a position in the teaching profession, and it appears that he is a person of more than average intelligence, has earned an honorable discharge from the U. S. Marine Corps, and appears to possess those attributes that would cause him to respect both himself and the law.

It is noted that previous to trial the prosecutor advised defendant's counsel that the State would recommend, after a plea of guilty, probation for defendant. Defendant does not, however, raise, nor do we find any evidence that defendant was punished for, taking a jury trial. See the recent case of *People v. Sivels* (1975), 60 Ill.2d 102, 104, 324 N.E.2d 422, rehearing denied.

■■■ Under all the facts in this record, it is our opinion the sentence imposed is excessive, but we do not find that the court erred or abused its discretion in refusing to place the defendant on probation. We, therefore, vacate the sentence imposed and remand the cause to the trial court for the purpose of conducting a new sentencing hearing pursuant to our present Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—1—1 *et seq.*), after which the court may impose such sentence[5] as may be appropriate.

## V.

Lastly this court must consider its rule to show cause entered June 7, 1974, wherein James D. Montgomery, as attorney for the defendant, was ordered to show cause "why this Court should not hold him in contempt for his failure to comply with the Court's order of 22 March 1974." On March 22, 1974, this court entered an order requiring Mr. Montgomery, as appellate counsel for defendant, to file his brief and abstract not later than May 8, 1974, with a notice that failure to do so would invite a rule to show cause. The defendant's brief and "excerpts of record" were not filed until August 7, 1974.

Defendant's counsel, Mr. Montgomery, took 28 months to file a brief and excerpts, during which time the defendant had been released on bail by this court pending appeal. Whatever attempts might be made

---

[5] " 'Sentence' is the disposition imposed by the court on a convicted defendant." (Ill. Rev. Stat. 1973, ch. 38, par. 1005—1—19.)

to justify such utter disregard of this court's orders and the rules of our supreme court[6] regarding the timely filing of records and briefs, this court will not tolerate in the future such conduct or inaction on the part of appellate counsel. In addition to the inherent power of this court to use its contempt power for violation of court orders or rules, the bar is put on notice that in the future this type of inattention to an attorney's professional responsibility will cause this court to forward all such pertinent facts to the "Attorney Registration Commission" created pursuant to Supreme Court Rules 751—769 (Ill. Rev. Stat. 1973, ch. 110A, par. 751—769). Though the majority of the appellate bar does comply with such rules and orders, only through the total effort of all appellate lawyers will the judicial system eliminate the layman's criticism of delays.

In his response to our rule to show cause, Mr. Montgomery, in an effort to justify his delay and failure to comply with the rules of this court, sought refuge in reciting the burden of a great volume of other business that prevented his prompt disposition of defendant's case. We are also serving notice that in the future the press of other business may not be sufficient grounds to justify any delay. We repeat the warning of this court in *Gray v. Gray* (1st Dist. 1955), 6 Ill.App.2d 571, 578, 128 N.E.2d 602, 605, that it is counsel's duty to procure the aid and assistance necessary to alleviate such conditions or see to it that such business will be handled by less clogged offices. Prompt disposition of litigation is too important to be delayed because a select group of attorneys may be enjoying more business at a given moment than their brethren.

This problem is not an isolated problem as to attorney Montgomery, but is illustrative of a symptom which occurs too frequently. Consequently, we believe this warning—not only to attorney Montgomery but to the bar in general—will suffice. We are, therefore, discharging the rule to show cause heretofore entered.

For these reasons the judgment of conviction of the circuit court of Cook County is affirmed, the sentence imposed on the defendant is vacated and the cause remanded to the said circuit court for a new sentencing hearing, and the imposition of such sentence as the circuit court deems proper in accordance with the views expressed herein; and the rule to show cause issued by this court is discharged.

Judgment of conviction affirmed; sentence vacated and remanded; rule to show cause discharged.

STAMOS and HAYES, JJ., concur.

---

[6] Ill. Rev. Stat. 1973, ch. 110A, par. 343, 608, 612.