THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES DUANE CRABTREE, Defendant-Appellant.

Fourth District   No. 4—87—0063

Opinion filed November 19, 1987.

Daniel D. Yuhas and Timothy M. Gabrielsen, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas K. Leeper, State's Attorney, of Quincy (Kenneth R. Boyle, Robert J. Biderman, and Rebecca L. White, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

After trial by jury in the circuit court of Adams County, defendant James Duane Crabtree was convicted of two counts of aggravated battery. Subsequently, he was sentenced to a single term of four years' imprisonment to run concurrently with a three-year sentence imposed for a prior felony. Defendant appeals contending (1) the circuit court erred by making prejudicial comments to him during trial; (2) the prosecutor's closing argument was improper; (3) the court erred in permitting a police officer to testify that the substance he saw on a boot worn by defendant was blood; and (4) the State's impeachment evidence of defendant's prior conviction of a felony was improperly admitted because defendant had not then been sentenced for that offense. Because of the impropriety in the comments made by the court, we reverse and remand for a new trial.

No contention is made that the evidence at trial did not support the verdict but the evidence was conflicting and the proof of guilt did not have the overwhelming weight necessary to negate the effect of substantial error. In the early evening of August 3, 1986, defendant and the alleged victim, Richard Baze, became involved in a barroom

argument and left the tavern on foot. According to Baze, he and defendant crossed a street diagonally and stepped onto a sidewalk, and the next thing he remembered was awakening the next morning in a hospital with severe head and face injuries.

According to a State's witness, he saw the two men cross the street diagonally and Baze stepped up over the curb, whereupon the person accompanying Baze fell but righted himself and hit Baze, knocking him down. The witness testified that the other person then "jumped in [Baze's] face" and kicked him in the face. The witness stated that he did not see Baze hit that other person. The witness acknowledged he could not identify the person who beat Baze. On cross-examination the witness also testified he could not see what Baze's right arm was doing when the two men went over the curb. Defendant testified that he and Baze crossed the street diagonally, whereupon he started to run away, at which time Baze hit him in the jaw, causing him to slip. He said he gained his balance and hit Baze several times, causing blood to gush from Baze's face. Defendant denied jumping on Baze's face.

The comments giving rise to the reversible error occurred during the State's direct examination of a witness when the following colloquy between defendant and the court occurred in the presence of the jury:

> "THE COURT: Just a minute, while he is testifying I don't want to see you smiling. I don't want to see you shaking your hand or your head. Do you understand, Mr. Crabtree?
>
> MR. CRABTREE: Yes, your Honor.
>
> THE COURT: If you disagree with something you can take the stand and testify yourself."

The defendant contends that the court's admonition that he cease making gestures prejudiced him in the eyes of the jury and very likely influenced the jury's verdict. He maintains that the court could have admonished him concerning this conduct in a less obtrusive manner by requesting that counsel approach the bench and there apprising defense counsel of the court's dissatisfaction with defendant's conduct. He further asserts that the comment that he could take the stand and testify himself infringed upon his privilege against self-incrimination in that it compelled him to testify.

The State asserts that where, as here, the defendant's own actions provoke allegedly prejudicial comments, the defendant has no right to complain. The State also contends that in view of what it terms the strong case against defendant, he was almost compelled to take the stand in his own defense and that any prejudice from the

court's remarks thus "is clearly outweighed." The State also maintains that in saying defendant could testify, the court was merely stating a known fact. Furthermore, the State notes that the allegedly prejudicial comments were an isolated incident, and that the jury was instructed that no ruling or remark which the court made was meant to indicate an opinion as to the facts or what the jury's verdict should be.

■ As the State points out, the comment concerning defendant's gestures was precipitated by defendant's own actions. This did not, however, relieve the trial court of the responsibility of taking reasonably feasible steps to see that the defendant was not prejudiced in the eyes of the jury by the court's admonishing him to cease such conduct. Although the trial court's comments regarding defendant's gestures were almost certainly not intended as a display of favoritism toward the prosecution or prejudice against the defendant, some jurors may have interpreted them in this manner. Generally, courts have a duty not to engage in conduct which the jury might regard as a display of favoritism toward one of the parties. (*People v. Marino* (1953), 414 Ill. 445, 111 N.E.2d 534.) The admonishment to defendant to refrain from his improper conduct could better have been made by the court at a side-bar conference out of the hearing of the jury, in chambers, or after the jury had retired with the bailiff.

None of the cases on which the State relies in support of its position as to this issue are apposite. *People v. Dixon* (1976), 36 Ill. App. 3d 247, 343 N.E.2d 583, did not involve a jury trial. In both *People v. Osborne* (1966), 78 Ill. App. 2d 132, 223 N.E.2d 243, and *People v. Freeman* (1966), 78 Ill. App. 2d 242, 223 N.E.2d 444, the judicial comments at issue were not directed to defendant's courtroom conduct. However, better ways existed to admonish defendant as to his conduct; the first statement by the court to defendant is not the reason for our reversal.

■ We must reverse because of the court's statement to defendant in regard to his right to take the stand and testify. A statutory provision has been in effect in Illinois for many years which prohibits the circuit court from permitting any comment or reference to be made to the neglect of one accused criminally to testify. (Ill. Rev. Stat. 1985, ch. 38, par. 155—1.) Where a trial court in sustaining objection to evidence which a defendant sought to introduce stated "[h]e is here and he can answer for himself in regard to it," the supreme court determined, on review of the defendant's conviction, that the trial court's statement would have constituted reversible error if the error had not been waived. *Miller v. People* (1905), 216 Ill. 309, 315,

74 N.E. 743, 745.

In *People v. King* (1972), 4 Ill. App. 3d 942, 944, 282 N.E.2d 252, 254, a defendant appealed from a conviction in a case where, during a jury trial and in overruling the defendant's objection to the testimony of an alleged accomplice, the circuit court had stated: "Well, I think your client is here, he can—he is here to deny it, he can testify." The Fifth District held that the court's comments violated the defendant's rights under the fifth and fourteenth amendments and his State privilege against self-incrimination under article II, section 10, of the Illinois Constitution of 1870 as well as the legislative provision cited in *Miller* (Crim. Code, div. XIII, §6 (see Ill. Rev. Stat. 1905, ch. 38, par. 426)). However, because of the overwhelming nature of the proof of the defendant's guilt, the constitutional error was held to be harmless beyond a reasonable doubt on the basis of the rule set forth in *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.

The two cases upon which the State chiefly relies in support of its position as to this issue are inapposite. *People v. Kroll* (1972), 4 Ill. App. 3d 203, 280 N.E.2d 528, *cert. denied* (1973), 410 U.S. 930, 35 L. Ed. 2d 592, 93 S. Ct. 1371, involved a bench trial where no jury would be prejudiced. In *People v. Gonzales* (1978), 60 Ill. App. 3d 980, 377 N.E.2d 91, the prosecutor's argument which defendant alleged deprived him of a fair trial referred merely to defendant's failure, while testifying, to contradict a portion of the State's evidence.

As we have stated, here, the evidence in regard to defendant's guilt was conflicting and the proof was not overwhelming. The constitutional error arising from the court's comment that defendant could testify was not harmless beyond a reasonable doubt and requires retrial.

■ The contention of defendant that the State's closing argument was improper arises from statements by the prosecutor that the defendant was laughing and joking while sitting at the counsel table during trial. In support of its contention that the argument was proper, the State cites (1) *People v. Shelton* (1985), 140 Ill. App. 3d 886, 489 N.E.2d 879, where the prosecutor's reference to a defendant's laughing and smiling while testifying was held to be proper; and (2) *People v. Martinez* (1977), 45 Ill. App. 3d 939, 360 N.E.2d 495, which did not involve prosecutorial reference to a defendant's courtroom conduct.

Although no Illinois cases have apparently dealt with prosecutorial comments concerning a defendant's courtroom conduct while not on the witness stand, decisions of the courts of other jurisdictions univer-

sally condemn such comments. (*E.g., United States v. Wright* (D.C. App. 1973), 489 F.2d 1181 (references to defendant's apparent laughter while not testifying and apparent absence from courtroom during part of trial held improper); *Reed v. State* (Miss. 1967), 197 So. 2d 811 (statement in closing argument that defendant "sat and showed no emotion whatever" during trial held reversible error).) We deem these decisions to be sound and hold that the prosecutor's closing argument was improper. As defendant points out, in referring to his laughter when not on the witness stand, the assistant State's Attorney recounted events which all of the jurors may not have even seen. Their attention was most likely focused on the witness who was testifying during the defendant's laughter. We trust that this error will not be repeated on retrial. We need not decide whether it was of sufficient magnitude, of itself, to require reversal.

■ The trial court properly permitted Quincy police officer Sheldon Cheney to testify that a substance he observed on a boot which defendant was wearing at the time of his arrest was blood. Defendant contends that since the appearance of blood is a matter of common knowledge, and the stain remained "substantially the same" as at the time of his arrest, the jurors themselves should have been allowed to determine the nature of the stain. He contends that the State's qualifying Officer Cheney as an expert on blood identification resulted in the admission of a purported expert opinion as to the nature of the substance on the boot which was cumulative and inadmissible.

Cheney did testify to having observed blood on numerous occasions but we do not deem that testimony to be an attempt by the State to qualify him as an expert. As bloodstains are recognizable as a matter of common knowledge, it is unnecessary to qualify a police officer as an expert for the purpose of his identifying a substance as blood (*People v. Krone* (1981), 98 Ill. App. 3d 619, 424 N.E.2d 917), and testimony by lay witnesses that a substance is blood is admissible. *People v. Fink* (1978), 59 Ill. App. 3d 51, 374 N.E.2d 1311.

■ Cheney testified that the appearance of the substance on the boot had changed slightly since defendant's arrest. Therefore, the boot's appearance at the time of the trial did not convey to the jury an entirely accurate impression of its appearance at the time of defendant's arrest, and the jury was not fully capable of drawing inferences as to the boot's appearance at that time without the aid of additional evidence.

We need not determine whether the court erred in admitting testimony as to a prior conviction of defendant for impeachment purposes when no sentence had yet been entered on that conviction. We are

confident that if defendant is to be retried, the proceeding involved will be at a more final stage.

We reverse and remand to the circuit court of Adams County for a new trial.

Reversed and remanded.

SPITZ, P.J., and LUND, J., concur.