THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GARY MONDHINK, Defendant-Appellant.

Fifth District   No. 5—88—0360

Opinion filed February 23, 1990.

Daniel M. Kirwan, of State Appellate Defender's Office, of Mt. Vernon, and Kelly D. Long, of Kelly D. Long Law Office, of Hillsboro, for appellant.

Kathryn Dobrinic, State's Attorney, of Hillsboro (Kenneth R. Boyle, Stephen E. Norris, and Raymond F. Buckley, Jr., all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE CHAPMAN delivered the opinion of the court:

Defendant, Gary Mondhink, was convicted of driving while license revoked (Ill. Rev. Stat. 1987, ch. 95½, par. 6—303(d)) and sentenced to three years' imprisonment after a jury trial. Defendant appeals

from the judgment and sentence of the circuit court of Montgomery County.

Section 6—303(d) of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 6—303(d)): "[a]ny person convicted of a second or subsequent violation of this Section shall be guilty of a Class 4 felony if the original revocation or suspension was for a violation of Section 11—401 [leaving the scene of an accident involving death or personal injuries] or 11—501 [driving under the influence] of this Code, or a similar provision of a local ordinance, or a violation of Section 9—3 of the Criminal Code of 1961, as amended, relating to the offense of reckless homicide." Defendant Mondhink had prior convictions for driving while under the influence of alcohol and for driving while license revoked. At trial, over defendant's objection, the State introduced as evidence the information charging defendant with driving under the influence of alcohol, defendant's jury waiver and plea of guilty to the charge, the judgment and sentence order on the plea of guilty to the charge, and the order of revocation certified by the Secretary of State. Also admitted into evidence over defendant's objection were the previous information charging defendant with driving while license revoked, defendant's jury waiver and plea of guilty, and the judgment and sentence order on the plea of guilty to the charge of driving while license revoked. On appeal defendant argues that the trial court erred in admitting such evidence. Defendant also argues that it was error for the court to give jury instructions which included references to defendant's prior convictions.

■ In *People v. Smith* (1987), 162 Ill. App. 3d 739, 516 N.E.2d 335, the defendant was convicted of violating section 6—303(d) of the Illinois Vehicle Code. On appeal he argued that he was denied a fair trial because the trial court improperly admitted evidence of defendant's previous convictions for driving while license revoked and driving under the influence of alcohol. In *Smith* we held that in a conviction for driving while license revoked under section 6—303(d), the prior conviction for driving while license revoked and driving under the influence are elements of the enhanced offense and may be proved before the trier of fact. *Smith*, 162 Ill. App. 3d at 743, 516 N.E.2d at 337.

Defendant cites the following cases in support of his argument that the only issues that required a jury determination were that defendant was driving a motor vehicle on a public highway and that defendant's license was revoked: *People v. Turner* (1976), 64 Ill. 2d 183, 354 N.E.2d 897; *People v. Johnson* (1983), 115 Ill. App. 3d 987, 451 N.E.2d 28; *People v. Younge* (1980), 83 Ill. App. 3d 305, 404

N.E.2d 415; *People v. Papproth* (1977), 56 Ill. App. 3d 683, 371 N.E.2d 1097; and *People v. Osborne* (1967), 78 Ill. App. 2d 132, 223 N.E.2d 243. Defendant is correct that these cases followed the rule that the only two factors needed to establish a violation of the offense of driving while license revoked or suspended are that the defendant was driving a motor vehicle on a public highway and, that at the time, the defendant's driver's license was suspended or revoked. We fail to recognize how these cases support defendant's argument, however, that admission of evidence of defendant's previous convictions was error. On the contrary, in *Osborne* the court held that the admission of the documentary evidence to show the defendant's prior convictions was proper. The court went on to state:

"The fact of suspension is one of the essential elements of the offense as charged and must be proved by the People. It is a matter of common knowledge that suspension of a license to operate a motor vehicle must depend upon previous misconduct in the operation of a motor vehicle and we are not prepared to hold that spelling out the details of such previous misconduct in the proof of suspension should in and of itself constitute reversible error." *Osborne*, 78 Ill. App. 2d at 136, 223 N.E.2d at 246.

The other cases cited by defendant as authority for his position do not hold that the proof required to establish that defendant was driving while his license was suspended or revoked may not include evidence of his prior convictions. As we have already determined such evidence is properly admissible to prove the elements of the enhanced offense of driving while license revoked, we do not find the cases cited by defendant persuasive.

■ Likewise, reference to defendant's prior convictions in the jury instructions was not error. The instructions to which defendant directs our attention read:

"A person commits the offense of Driving While License Revoked when he drives a motor vehicle upon any highway of this State at a time when his driver's license or permit or privilege to do so is revoked, and he has previously been convicted of the offense of Driving While License Revoked and the original revocation of his driver's license was for a violation of Section 11—501 of the Illinois Vehicle Code which is the offense of Driving Under the Influence of Alcohol."

"To sustain the charge of Driving While License Revoked, the State must prove the following propositions:

First: That the Defendant drove a motor vehicle upon a highway of this State; and

Second: That the Defendant did so at a time when his driver's license was revoked; and

Third: That the original revocation of Defendant's driver's license was for a violation of Section 11—501 of the Illinois Vehicle Code which is the offense of Driving Under the Influence of Alcohol; and

Fourth: That the defendant has a previous conviction for the offense of Driving While License Revoked.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

Considering the facts of this particular case, the jury had to find that defendant had the prior convictions in order to satisfy the elements of the offense of driving while license revoked and the instructions properly set forth the elements. If defendant wished to have the jury instructed as to the limited purpose of the prior conviction evidence, it was incumbent upon him to tender such an instruction.

■ Ordinarily, in order for a defendant to complain about the absence of an instruction he must have tendered an instruction of his own. While we have held in criminal cases that the presumption of innocence and burden of proof instruction (Illinois Pattern Jury Instructions, Criminal, No. 2.03 (2d ed. 1981)) must be given whether or not tendered by counsel (see *People v. Layhew* (1989), 191 Ill. App. 3d 592, 548 N.E.2d 25), the trial court is under no obligation to give *sua sponte* limiting instructions as in the case at bar. A failure to tender a proper instruction will result in a waiver of any objection concerning its absence on appeal. (*People v. Grant* (1978), 71 Ill. 2d 551, 557, 377 N.E.2d 4, 7; *People v. Cregar* (1988), 172 Ill. App. 3d 807, 822, 526 N.E.2d 1376, 1386-87.) He did not tender such instruction. We find the trial judge's failure to give *sua sponte* a cautionary instruction on the limited use of the prior conviction evidence was not a denial of defendant's right to a fair trial.

■ Defendant next contests the constitutional validity of the enhancement provisions of section 6—303(d). It is well settled that a strong presumption of constitutionality attaches to a statute. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 499, 431 N.E.2d 344, 352.) The burden rests upon the party attacking a particular law to show that it is clearly arbitrary, is unreasonable and has no foundation in the State's police power. (*People v. Copeland* (1980), 92 Ill. App. 3d 475,

479-80, 415 N.E.2d 1173, 1177.) Defendant argues that his sentence under the enhancement provisions of section 6—303(d) constituted a second punishment for a previously committed crime, in violation of the constitutional proscriptions against double jeopardy. (U.S. Const., amend. V; Ill. Const. 1970, art. I, §10.) In particular, defendant argues that he has been punished a second time for his previous driving under the influence conviction.

Double jeopardy may apply in three separate situations: (1) where there is a second prosecution for the same offense after acquittal; (2) where there is a second prosecution for the same offense after conviction; and (3) where there are multiple punishments for the same offense. (*North Carolina v. Pearce* (1969), 395 U.S. 711, 716, 23 L. Ed. 2d 656, 664, 89 S. Ct. 2072, 2076.) The double jeopardy inquiry generally focuses on the elements of the offenses charged. (*State v. Vitale* (1980), 447 U.S. 410, 416, 65 L. Ed. 2d 228, 235, 100 S. Ct. 2260, 2264-65.) If each offense requires proof of a fact that the other does not, the traditional test for double jeopardy purposes is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes. (See *Blockburger v. United States* (1932), 284 U.S. 299, 304, 76 L. Ed. 2d 306, 309, 52 S. Ct. 180, 182.) The *Blockburger* test focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial. (*Vitale*, 447 U.S. at 416, 65 L. Ed. 2d at 235, 100 S. Ct. at 2265; *People v. Mueller* (1985), 109 Ill. 2d 378, 388, 488 N.E.2d 523, 528.) In limited circumstances, the *Blockburger* test has been expanded so that courts may look beyond the face of the statutes involved to the elements actually necessary to establish the charges to determine whether double jeopardy principles have been violated. See *Harris v. Oklahoma* (1977), 433 U.S. 682, 53 L. Ed. 2d 1054, 97 S. Ct. 2912.

Defendant's claim fails under the *Blockburger* test since, on the face of the statutory provisions, each offense requires proof of a fact the other does not. Looking beyond the face of the statutes, driving under the influence is not a lesser-included offense of driving while license revoked. Driving under the influence would not be automatically established by a conviction for driving while license revoked. Driving under the influence is not a necessary element of driving while license revoked. (See *Vitale*, 447 U.S. at 421, 65 L. Ed. 2d at 238, 100 S. Ct. at 2267.) It is clear that the previous driving under the influence conviction was a factor the court properly considered when it punished defendant for driving while his license was revoked. Defendant's right to be free from double jeopardy was not designed

to pardon defendant for the offense of driving while license revoked merely because evidence of the prior crime for which defendant's license was revoked was presented.

In the instant case, defendant's prior driving under the influence conviction was used merely to determine the length of the sentence for which he was eligible, and the sentence imposed did not constitute a second punishment for the prior driving under the influence conviction. In a similar constitutional challenge to the Habitual Criminal Act (Ill. Rev. Stat. 1987, ch. 38, par. 33B—1 *et seq.*), the court declared that

> "defendant was not punished twice for the same offense, for it is well settled that 'the punishment is for the *new* crime only, but the penalty is made heavier by statute because the defendant is an habitual criminal.'" (Emphasis added.) *People v. McNeil* (1984), 125 Ill. App. 3d 876, 882, 466 N.E.2d 1058, 1062, quoting *People v. Lawrence* (1945), 390 Ill. 499, 504, 61 N.E.2d 361, 364, *cert. denied* (1945), 326 U.S. 731, 90 L. Ed. 435, 66 S. Ct. 38.

Defendant continues his constitutional challenge of section 6—303(d) by arguing that the legislature acted arbitrarily and capriciously in limiting the predicate offenses to reckless homicide, driving under the influence, and leaving the scene of an accident. Defendant contends that since a license may be revoked for the commission of any felony in which a motor vehicle is used (Ill. Rev. Stat. 1987, ch. 95½, par. 6—205(a)(3)), these same felonies should also constitute predicate offenses under section 6—303(d). Defendant argues that if the purpose of section 6—303(d) is to prevent driving by those with revoked licenses, then the statute does not do this in a rational manner.

■■ ■ The equal protection clauses of the United States and Illinois Constitutions do not prohibit the General Assembly from enacting legislation which affects different classes of persons differently. In the absence of involvement of a fundamental right, the legislature may even differentiate between persons similarly situated if there is a rational basis for doing so. (*People v. Tosch* (1986), 114 Ill. 2d 474, 481, 501 N.E.2d 1253, 1256, *cert. denied* (1987), 483 U.S. 1008, 97 L. Ed. 2d 740, 107 S. Ct. 3235.) The legislature apparently did not consider the danger posed by persons driving on a revoked license who have a previous conviction for driving under the influence, reckless homicide or leaving the scene of an accident to be the same as the danger posed by persons driving on a revoked license with previous, non–vehicular-related offenses. Because the predicate offenses of sec-

tion 6—303(d) pose a particular danger to the motoring public, the legislature may have reasonably decided to limit the enhancement provisions to predicate offenses posing the greatest threat to the motoring public.

The equal protection guarantee does not prohibit the legislature from choosing to focus particularly on the hazard posed by traffic offenders. The legislature is "allowed to take reform 'one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind' [citation]; and a legislature need not run the risk of losing an entire remedial scheme simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked." (*Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 372-73, 489 N.E.2d 1374, 1384, quoting *McDonald v. Board of Election Commissioners* (1969), 394 U.S. 802, 809, 22 L. Ed. 2d 739, 746, 89 S. Ct. 1404, 1409.) Therefore, we cannot say that the legislature did not act rationally when it limited the predicate offenses of section 6—303(d), and we hold that section 6—303(d) does not violate the equal protection guarantees of the United States and Illinois Constitutions.

Defendant next poses for our review the issue of whether his sentence was arbitrary and excessive.

At the sentencing hearing, a presentence investigation report was submitted which included an abstract of defendant's driving record, which showed that on April 15, 1980, defendant pled guilty to a charge of speeding; on January 11, 1982, he pled guilty to a charge of speeding; on March 30, 1982, he pled guilty to a charge of speeding; on February 7, 1985, he pled guilty to a charge of driving too fast for conditions; on October 15, 1986, he pled guilty to a charge of driving under the influence of alcohol and was sentenced to seven days' imprisonment, to pay a fine and costs, and to one year's probation with residential treatment for alcohol abuse with outpatient counseling thereafter; on October 15, 1986, he pled guilty to a charge of driving under the influence and was sentenced to pay a $1,000 fine and $320 in costs, to 21 days' imprisonment, and to one year's probation; on October 15, 1986, defendant pled guilty to the offense of driving while license suspended, was sentenced to pay a fine and costs, to seven days' imprisonment and to one year of conditional discharge, and was subsequently sentenced to 45 days' imprisonment when his conditional discharge was revoked; on October 15, 1986, defendant pled guilty to the offense of driving while license suspended; and on April 13, 1987, he pled guilty to the offense of driving while license revoked and was sentenced to pay fines and costs and to one year's probation. With re-

gard to the instant case, under section 6—303(d) defendant was found guilty of a Class 4 felony. The sentencing range for the Class 4 felony driving while license revoked is a fixed term of from one to three years. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(7).) Defendant was sentenced to three years' imprisonment.

Defendant claims that it is evident from the trial judge's comments at sentencing that the court considered both improper factors and facts not in evidence and, therefore, acted arbitrarily in its imposition of the maximum sentence. The comments to which defendant refers are:

"THE COURT: You know, Mr. Long, this has been a problem in this case. I will read through the factors in mitigation. We have had denial, denial, denial, denial, denial, denial. A year ago I was in this same position. I know you weren't the Attorney then. We had a sentencing hearing. A crowd of witnesses testified, good people, good people. Give Gary Mondhink a chance. The Court gave Mr. Mondhink that chance. Since that time we have had an incomplete compliance with probation, an arrest for felony driving while license revoked, a jury trial, and a conviction, another arrest for felony driving while revoked. That is pending trial. I wanted to deny bond. The Court was wrong at that time and felt strongly about denying bond. We made very specific conditions regarding bond. Defendant did not comply with those terms and he was incarcerated. I have spent a good deal of time considering this case, this particular case, spent a good deal of time feeling guilty about sentencing Mr. Mondhink to the Department of Corrections for which I am about to do, and wondering why should I be feeling guilty here? Everyone has gone out of their way to help Gary Mondhink. I am convinced that if he was placed back on probation, it would be just a matter of a day or two out and about, he'd be putting the public at risk.

Will Department of Corrections help Gary Mondhink? It's up to Gary Mondhink. Probably not in terms of his alcoholism. It will certainly keep the public safe during that period of time. I have been presented no program that would guarantee to the Court that he wouldn't be out in a vehicle.

You indicated that he's not hurt anybody. I say thank God. I am not prepared to wait until it happens. And then, Mr. Mondhink will be in here and say, 'I didn't mean to. I'm sorry.' And, I am sure he would be.

The Court has responsibility here not only to Gary Mond-

hink, not only to others finding themselves in a similar situation, but to the public. Everyone has gone out of his way, friends and neighbors. The Court's to see to it that he is treated fairly and that it's not going to happen again.

I think the defendant's conduct has caused or certainly threatened serious harm in terms of others out on the roadway. He has a history of criminal activity. I know you distinguish criminal activity from driving. The laws don't do that any longer, and I think the public at large is willing to accept that fact that driving under these circumstances is criminal activity. This Court is willing to accept that. Sentence is necessary to deter others from committing the same crime.

Mr. Mondhink, on his first arrest, was treated, hopefully, just like anyone else for that type of an offense. But, we are talking about driving under the influence, driving under the influence, driving while license suspended, driving while license revoked, conditions of probation not being complied with, conditions of bond not being complied with. He's left the Court no alternative, none.

Perhaps less than three years would be all that is necessary to rehabilitate Mr. Mondhink. But, the Court feels at this point in time I have no choice. I have been put in a position, but I have to sentence you to three years in the Department of Corrections and assess costs. That means they can keep him a year and a half.

I hope that when the time comes that when he returns, that alcoholism problem or whatever problem it is will be behind him. But, at least the public can feel safe that he is not out on the roadway. There is no other alternative the Court has. I cannot shackle the defendant at his home. We do not have the facilities to use the sophisticated types of shackles that allow the Sheriff's Office to monitor where he is at. I'd love to see that he could remain on the farm and get the farm going and help his brother out. My main worry is him getting in a vehicle and hitting the road. He's gone against his word enough times in front of this Court that I can't accept that anymore."

Sentencing decisions are largely within the discretion of the trial court and will not be disturbed absent an abuse of discretion. (*People v. Fowler* (1981), 98 Ill. App. 3d 202, 207, 423 N.E.2d 1356, 1359.) The record indicates the defendant had extensive traffic violations, suspensions and revocations of probation leading up to this incident. We find the court did not abuse its discretion and that the sentence of

three years' imprisonment was not excessive.

Finally, defendant argues that he was unconstitutionally denied the right to elect treatment for alcoholism rather than imprisonment at the time of his sentencing. Defendant was sentenced May 27, 1988, when the Alcoholism and Substance Abuse Act (Ill. Rev. Stat. 1987, ch. 111½, par. 6301 *et seq.*) was in effect. On July 1, 1988, that act was repealed and the Illinois Alcoholism and Other Drug Dependency Act (Ill. Rev. Stat. 1987, ch. 111½, par. 6351—1 *et seq.*) became effective. Under the former Act, had defendant been found to be an alcoholic, as that term was therein defined, defendant would not have been entitled to elect treatment for alcoholism rather than imprisonment. Had defendant been sentenced at the time the Illinois Alcoholism and Other Drug Dependency Act was effective, he could have elected a treatment program instead of imprisonment if he was found to be an alcoholic as defined under that Act. Defendant argues that the treatment provision of the Alcoholism and Substance Abuse Act unconstitutionally excluded alcoholics.

■■■ In determining whether a given legislative classification denies a person the equal protection of the laws, where that person is not a member of a suspect class or has not been deprived of a fundamental right, the courts restrict their role to determining whether the particular legislative classification is rationally designed to further a legitimate State purpose. (*People ex rel. Tucker v. Kotsos* (1977), 68 Ill. 2d 88, 96, 368 N.E.2d 903, 907.) We do not find that defendant is a member of a *suspect class, i.e.*, groups that historically have been the subject of widespread, substantial, and purposeful discrimination. (See *San Antonio Independent School District v. Rodriguez* (1973), 411 U.S. 1, 36 L. Ed. 2d 16, 93 S. Ct. 1278.) Also, we do not find that the defendant's interest in electing treatment for alcoholism is a fundamental right. Fundamental interests generally are those that lie at the heart of the relationship between the individual and a republican form of integrated government. (*Tucker*, 68 Ill. 2d at 97, 368 N.E.2d at 907.) Only interests such as those in the expression of ideas (see, *e.g., Buckley v. Valeo* (1976), 424 U.S. 1, 44-45, 46 L. Ed. 2d 659, 702, 96 S. Ct. 612, 647), in participation in the political process (see, *e.g., Harper v. Virginia State Board of Elections* (1966), 383 U.S. 663, 16 L. Ed. 2d 169, 86 S. Ct. 1079), in travel among the States (*Shapiro v. Thompson* (1969), 394 U.S. 618, 22 L. Ed. 2d 600, 89 S. Ct. 1322), and in privacy with regard to the most intimate and personal aspects of one's life (see, *e.g., Skinner v. Oklahoma ex rel. Williamson* (1942), 316 U.S. 535, 86 L. Ed. 1655, 62 S. Ct. 1110) are fundamental. We therefore limit our analysis to a determination of whether the legisla-

tive classification of the Alcoholism and Substance Abuse Act was rationally designed to further a legitimate State purpose.

The equal protection clause does not mean that a State may not draw lines that treat one class of individuals or entities differently; the test is whether the difference in treatment is invidious discrimination. (*People v. Perine* (1980), 82 Ill. App. 3d 610, 615, 402 N.E.2d 847, 849; *Dandridge v. Williams* (1970), 397 U.S. 471, 25 L. Ed. 2d 491, 90 S. Ct. .1153.) There is a presumption in favor of the validity of the classification made by the legislative body, and one who assails it has the burden of proving the classification to be arbitrary. *Jacobs v. City of Chicago* (1973), 53 Ill. 2d 421, 425, 292 N.E.2d 401, 404.

In the instant case the only attempt made by defendant to show that the statutory classification at issue is irrational or arbitrary is defendant's argument that the Alcoholism and Substance Abuse Act irrationally eliminated all alcoholics even though the purpose of the Act was to curb the springboard to crime and to rehabilitate the defendant. The legislature has broad latitude and discretion in classification, especially in the criminal area. (*People v. McCabe* (1971), 49 Ill. 2d 338, 340-41, 275 N.E.2d 407, 409.) As the State suggests in its brief, the legislature could rationally have distinguished between alcoholics and persons addicted to controlled substances, because alcohol, as opposed to controlled substances, is legal and easily accessible. The legislature may have recognized that because controlled substances are illegal and oftentimes expensive, those seeking to acquire them are oftentimes forced to consort with the criminal element. The legislative determination to distinguish alcoholics from those addicted to controlled substances has a rational basis, and we do not find that defendant was the subject of invidious discrimination.

The judgment of the trial court is affirmed.

Affirmed.

WELCH and RARICK, JJ., concur.