THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JIMMIE LEE CAIN, Defendant-Appellant.

(No. 57402;

First District (4th Division)—October 10, 1973.

Stewart C. Orzoff, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago, (Kenneth L. Gillis and Mariann Twist, Assistant State's Attorneys, and Jean Scott, Senior Law Student, of counsel,) for the People.

Mr. PRESIDING JUSTICE BURMAN delivered the opinion of the court:

Jimmie Lee Cain, the defendant, was charged by an indictment with attempted armed robbery. In a bench trial before the Circuit Court of Cook County on March 8 and 9, 1972, he was found guilty as charged and sentenced to five years probation, the first year to be spent in the House of Correction. This appeal followed.

On appeal the defendant contends that (1) he was denied due process of law when the trial court took judicial notice of the length of time that the victim of the attempted robbery would have had to observe the perpetrator; (2) he was denied due process of law when the court took judicial notice of the time that it would take to travel from one place in the city of Chicago to another; (3) he was denied a fair trial when

his defense counsel failed to withdraw from the case before testifying as a witness; (4) he was not proven guilty beyond a reasonable doubt; and (5) his sentence is excessive.

The evidence may be summarized as follows. On July 30, 1971, at approximately 4:40 P.M. a man entered Bob's liquor and Grocery Store, located at 5669 West Madison Street in Chicago. Mrs. Mattie Harris, the complaining witness, was alone in the store. The man approached the counter and asked her for a match. She bent over to obtain one, and as she straightened up the man announced a holdup. He took a revolver from his pocket and laid it on the counter with the barrel pointing at Mrs. Harris. At this point an unidentified man opened the door of the store and yelled something, which momentarily distracted the would be robber. Mrs. Harris got her own gun from behind the counter, "drove the assailant to the floor" and fired a shot at him. He crawled out the door and fled, and Mrs. Harris called the police.

On August 4, 1971, Mrs. Harris observed the defendant on the street a few blocks from the store. She recognized him as the man who had tried to rob her. He had on the same straw hat that he had worn when he entered the store to commit the robbery one week earlier. She called the police who arrested the defendant.

At trial the defendant testified in his own behalf. He stated that on the afternoon of July 30 he was picked up by a friend, Charles Womack, between 1:30 and 2 P.M. He and Womack drove to the vicinity of 69th Street and Stony Island Avenue, where they picked up two young women, Diana Williams and Beverly Lewis. From there the four went to Loop College, located in downtown Chicago, to check on some grades. They then went to the Bell & Howell plant at 7100 North McCormick, where the young women worked. The defendant and Womack dropped the young women off between 3:30 and 4 P.M. and proceeded to the American Hospital, located on Irving Park Road near Broadway, where they attempted to have some papers signed for the defendant's brother. From there they went to a McDonald's restaurant on Clark Street, where they were at 4:40 P.M. This testimony was corroborated by that of Womack and Miss Williams.

We direct our attention first to the contention that the court denied the defendant due process of law when it took judicial notice of the length of time that Mrs. Harris had to observe the perpetrator of the attempted robbery. This stems from the following comment, made by the court at the conclusion of the evidence:

> "Now, in that testimony, 4:40, July 30th the Court must take judicial notice that that's daylight savings time, it must be very light out. It was brought out it was dark or anything else [*sic*].

So I would assume that she had a chance to look at him. Maybe as long as three or four minutes."

■■ After examining this comment we have concluded that the court did not actually take judicial notice of the length of time which Mrs. Harris would have had to observe the man who attempted to rob her. Rather it took judicial notice that, owing to the effect of daylight saving time, it would have been light at 4:40 P.M. on July 30 and concluded from the evidence that Mrs. Harris would have had three or four minutes in which to observe the defendant under these conditions. This was proper.

It is well established that courts in Illinois may take judicial notice of that which everyone knows to be true. (*People v. Tassone* (1968) 41 Ill.2d 7, 241 N.E.2d 419.) That daylight saving time is in effect here on July 30 is a fact which clearly falls within this category.

■■ In the present case the court acted as the trier of the fact. We agree with the defendant that the deliberations of the court in such a case are limited to the record made before it during the course of the trial. (See *People v. Wallenberg* (1962), 24 Ill.2d 350, 181 N.E.2d 143.) In our opinion, however, this includes not only the evidence actually adduced but also the reasonable inferences which may be drawn from it. Mrs. Harris provided detailed and uncontradicted testimony as to the events which transpired in the liquor store during the course of the attempted robbery. This testimony is more than adequate to support the reasonable inference that three or four minutes elapsed between the time that he fled and that Mrs. Harris was able to observe him during this period. Therefore, we do not think that it was improper for the trial court to have reached this conclusion even though there was no direct testimony as to how long the assailant was in the store. For these reasons we consider the defendant's first contention to be without merit.

The defendant's second contention is that the court denied him due process of law when it took judicial notice of the length of time that it would take to travel from the Bell & Howell plant to the site of the robbery. In commenting on the evidence the court stated that assuming that the testimony of Miss Williams was true, the defendant, nonetheless could have traveled to the scene of the crime "in eighteen or twenty minutes." It went on to say, "I'm saying ten to four and this thing is supposed to be four forty, that's fifty minutes. Now I say you can make it in twenty minutes without a lot of traffic. We will give you a half hour or more for heavy traffic * * *."

The defendant urges that this was error and relies upon *People v. Wallenberg* (1962), 24 Ill.2d 350, 181 N.E.2d 143. In *Wallenberg* the defendant in attempting to establish an alibi testified that there were

no gasoline stations on a certain route which he had driven on the day of the robbery where he might have obtained air for his tire. In finding him guilty, the court commented: "He told me there were no gas stations on the stretch of the street where he could get air. I happen to know different. I don't believe his story." There had been no evidence introduced to rebut the defendant's testimony, and our Supreme Court reversed the conviction stating that a determination based upon the private knowledge of the court untested by cross-examination or any of the rules of evidence amounts to a denial of due process of law.

■■ In the present case there was no evidence as to the length of time required to travel between the Bell & Howell plant, where the defendant testified that he was at approximately 4 P.M., and the scene of the attempted robbery which occurred at 4:40. However, we believe that none was necessary. The locations of the Bell & Howell plant and the scene of the robbery were in evidence, as were the times at which the defendant allegedly was at each location. From these the court was entitled to have drawn an inference as to how long it would have taken the defendant to have traveled from one location to another and to have formed a conclusion as to whether he could have arrived at the liquor store in time to attempt the robbery. It may be that the court took judicial notice of the traffic conditions along the route which the defendant would have taken, but this would have been proper, as the traffic conditions in certain parts of the city during certain hours of the day are common knowledge. The comments made by the court in the present case are distinguishable from those made in *Wallenberg* in that they did not introduce a fact wholly unsupported by any evidence in the record.

■■ In addition to the foregoing, it is apparent from the court's further comments, that it based its decision upon the positive identification of the defendant made by the complaining witness. The court stated: "I watched Mrs. Harris  *  *  *. I think she was sure. I think she was telling the truth. She had maybe upwards of maybe three minutes to look at the man's face before the shot. So, for that reason and I think they proved their case beyond all reasonable doubt  *  *  *." Therefore the court's comment that the defendant could have traveled to the scene of the attempted robbery in time was not prejudicial.

The defendant's third contention is that he was denied a fair trial when the assistant public defender who represented him testified as a witness without withdrawing from the case. We agree with the defendant that the practice of an attorney testifying as a witness in behalf of a party that he represents is to be condemned. However in the present case the assistant public defender's testimony tended to impeach damaging testimony of a prosecution witness and therefore was favorable to the defen-

dant. Under these circumstances we fail to see how the defendant could have been prejudiced by it.

■■ The defendant's fourth contention is that he was not proven guilty beyond a reasonable doubt. With respect to this he argues in essence that the testimony of Mrs. Harris positively identifying him as the would-be robber was incredible and that his testimony regarding his alibi was unimpeached and at least partially corroborated by the testimony of Womack and Miss Williams. The function of the trial court is to resolve questions of fact. It is in the best position to observe witnesses and to weigh their credibility. This court will reverse only in those cases in which the evidence is so insufficient as to raise a doubt regarding the guilt of the accused. (*People v. Williams* (1972), 52 Ill.2d 455, 288 N.E.2d 406.) In the present case the court's comments on the evidence indicate that it considered Mrs. Harris a credible witness and that it believed her testimony. They also indicate that it did not believe the testimony of the defense witnesses regarding the alibi. The record is sufficient to support these conclusions, and we do not believe that it leaves a reasonable doubt as to the defendant's guilt.

■■■ Finally, the defendant contends that his sentence is excessive. Sentencing is within the sound discretion of the trial court, and this court will modify a sentence only when it appears from the record that such discretion has been abused. In view of the nature of the crime committed by the defendant and particularly the involvement of a deadly weapon we do not believe that the trial court abused its discretion in sentencing the defendant to probation and imposing the condition that he spend the first year in the House of Correction.

For the foregoing reasons the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

ADESKO and DIERINGER, JJ., concur.