THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ISAAC SNULLIGAN, Defendant-Appellant.

First District (5th Division)   No. 1—87—3653

Opinion filed September 21, 1990.

Michael J. Pelletier and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb and Kenneth T. McCurry, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

Isaac Snulligan was convicted of delivery of a controlled substance after a bench trial. After a hearing in aggravation and mitigation, he was sentenced to seven years' imprisonment with the Illinois Department of Corrections.

Isaac Snulligan (Isaac) appeals his conviction and seven-year sentence for the crime of delivery of less than 10 grams of cocaine. (Ill. Rev. Stat. 1983, ch. 56½, par. 1401(c).) The crime occurred on January 30, 1986. The conviction was entered on January 30, 1987. Notice of appeal was not filed until December 1987. Final briefs were not filed until June 1990 with a request for oral argument.

Isaac claims due process violations and the failure of the State to prove its case against him beyond a reasonable doubt.

For the following reasons, we affirm Isaac's conviction and sentence.

The facts surrounding the crime are best described in a Rule 23 order (107 Ill. 2d R. 23) entered by this court in an appeal taken by Isaac's brother Bernard, who was tried simultaneously with Isaac. The facts as presented in *People v. Snulligan*, No. 1—87—1647, are as follows:

> "On January 1, 1986, at approximately 7:00 p.m., police officer James Jones went to the third floor of an apartment building at 3549 West Madison in Chicago with other police officers in order to make a controlled purchase of narcotics. While standing in the dark third-floor hallway, Jones knocked on the apartment door. Isaac Snulligan responded by pulling up a flap in a 12-inch by five-inch slot in the front door. Jones asked for a 'quarter bag of girl,' and said that he saw the defendant give Isaac a blue plastic bag containing white powder later shown to contain cocaine. Jones then passed a prerecorded $20 bill, which had been dusted with tracing powder, through the door slot, but the defendant then told him the price was $25. Jones then pushed an additional dusted prerecorded $10 bill through the slot, and the defendant gave him $5 in change.
>
> Upon receiving the plastic bag, Jones went outside the

building to watch the apartment windows. On the way down, he saw other police officers ascending the stairs to the third floor. While downstairs, Jones saw Isaac throw another plastic bag containing three small packets out of the third-floor window. Jones recovered the bag when it hit the ground. The content of these packets also was cocaine. Jones testified that he dusted the purchase money with tracer powder, although he admitted that Officer Patricia Warner was near him at the time.

Officer Warner testified that she photographed and dusted the police money used in the narcotics sale, and said that she took it to the apartment building. She saw Officer Jones take the marked money into the building with him. After several minutes she saw Jones come out of the building with a clear plastic bag which contained a powdered substance.

While Jones waited outside the building, Officer Warner and other officers went to the third floor where she knocked on the apartment door. A person answered, but no one inside opened the door. Warner then announced their office, and Officer Sarpoleous used a sledge hammer to remove the burglar gates and lock from door. Upon entering they arrested Isaac Snulligan; however, they found more burglar gates inside barring them from the back of the apartment. When these gates were removed, she saw the defendant at the rear of the apartment with two other people. Warner said there were several sets of gates, but only two of them were locked. The officers recovered $460 from a couch, $30 of which was the prerecorded and dusted money from the police contingency fund. Traces of the dusting powder showed up on the hands and faces of the defendant and Isaac Snulligan.

Defendant's younger brother, Canute Snulligan, testified that his girl friend, Elisha Davis, was the lessee of the apartment and had moved into it three months earlier when the apartment's front door was practically new and there was no slot in it. Canute said that he and his two brothers were at the rear of the apartment when there was a knock at the door, and Elisha came back to ask for $5 change which he gave to her. Shortly thereafter, Elisha ran to the rear of the apartment saying that the police were at the door. Canute said that he stuffed all the money which had been on his person into a nearby couch, including the $30 he had gotten from Elisha a few moments earlier and opened the gates to the rear of the apartment to permit a search of the premises. Canute then said

that since January 1, 1986, the apartment had not been repaired nor had anyone lived in it."

Bernard was found guilty of delivery of the cocaine and sentenced to a term of five years.

Isaac does not dispute these basic facts but argues that his conviction for delivery of cocaine should be reversed because:

(1) The trial judge improperly took judicial notice of certain facts.

(2) The trial judge improperly placed the burden of proof.

(3) He was not proven guilty of delivery of a controlled substance beyond a reasonable doubt.

■■ Isaac Snulligan alleges that the court repeatedly and improperly took judicial notice of alleged facts supporting the State's theory of the case and as a result Isaac Snulligan was denied the fair trial he was entitled to under the due process clause of the fourteenth amendment. It is well established that courts in Illinois may take judicial notice of that which everyone knows to be true. *People v. Cain* (1973), 14 Ill. App. 3d 1003, 1006, 303 N.E.2d 756, 758.

Isaac claims that the comments of the trial judge concerning the light at the time of the event, tracing powder, and Isaac's height made at trial denied him a fair trial as guaranteed by the due process clause. Isaac did not raise the issue of the judge's comments when the judge made them or in a post-trial motion, but rather claims the comments were plain error, relying on the theory that the court improperly took judicial notice of facts contrary to the law of evidence. Isaac does not dispute the fact that he was involved in the illegal drug transaction. His argument and defense were that a third party was the actual deliverer of the drugs.

While Officer Jones was being questioned about the lighting, and the discrepancy between his testimony and Warner's, the court stated the following:

"THE COURT: Seven o'clock, on January the 1st, I think they would have some light or they would be working in the dark. Okay."

The following is the pertinent testimony concerning the substance referred to as tracing powder.

"MR. FRANKS: Judge, I am going to object at this time to calling it [is] tracing powder.

THE COURT: Well, I think the judge knows what it mean[s].

MR. FRANKS: I have no objection to saying powder, but to say it is a tracing powder—

THE COURT: We learned what that was, 40 years ago in

the Army. Before then, I studied at the police lab. So I think we know what he is talking about."

Defense counsel sought to establish the height of all the individuals arrested in the apartment. This was done in an attempt to show the improbability of the alleged door slot as having been placed as high as Officer Jones alleged it to have been. On cross-examination, Officer Jones stated that defendant was five feet three inches tall. Following this testimony the court examined the information file and announced, "I can take judicial notice of the court file. The court file states five foot five."

■■ ■ The comments of the trial judge concerning the lighting on the date and time of the event as well as defendant's height only went to whether the police officer's identification of Isaac's participation in the event was accurate. The judge's comments on tracing powder only demonstrated the judge's knowledge of what tracing powder was. The only issue concerning tracing powder appears to be which officer took the powder and placed it on the currency involved in the drug transaction which was the basis of the prosecution. Since the judge's comments complained of did not prejudice the defendant, we can find no reason to reverse the trial judge on that account.

In fact, a trial judge or any judge should not make any comment during a trial unless the law compels him to if he aspires to be a supreme court judge or reelected. No judge was ever denied appointment, election, or even reversed by something he or she did not say. Many have gotten into serious problems by something they did say.

As a matter of law a judge's comments constitute reversible error only if the remarks he or she made during the trial prejudice a party or a party was harmed by the remark. (*People v. Wells* (1982), 106 Ill. App. 3d 1077, 435 N.E.2d 688.) It is the defendant's burden to show that he has been harmed by the remarks of the judge. (*People v. Wells* (1982), 106 Ill. App. 3d 1077, 436 N.E.2d 688.) Prejudice or harm can be shown where a trial court expresses a disbelief in the defense witness testimony or confidence in the credibility of the prosecution or an assumption of defendant's guilt. (*People v. Sprinkle* (1963), 27 Ill. 2d 398, 189 N.E.2d 295.) Nothing in the trial judge's comments now complained of indicate how the defendant was prejudiced.

The same conclusion must be reached with respect to Isaac's contention that the trial judge improperly placed the burden of proof on the defendant, rather than the State. Isaac alleges that during closing arguments the court improperly placed the burden of proof on him by questioning his failure to produce the testimony of the actual individual who was selling narcotics in addition to his failure to produce dia-

grams and photographs of the premises and as a result Isaac was denied his basic fourteenth amendment right to be presumed innocent.

The defense attorney theory at trial was that others in the apartment where Isaac was arrested had sold drugs, but that Isaac had not. Specifically, the defense presented testimony that Elisha Davis, the tenant of the apartment, was the pusher. As defense counsel argued this theory, the following remarks were made:

"THE COURT: I was wondering what happened to Elisha?

MR. FRANKS: Judge, the State wanted to put on Elisha, they certainly could.

THE COURT: I thought that was your Defense?

MR. FRANKS: You want me to put on Elisha Davis to admit she committed this crime, is that what you want me to do?

THE COURT: That is your theory of the case.

MR. FRANKS: You are suggesting that I could put Elisha Davis on?

THE COURT: I didn't hear from Elisha.

MR. FRANKS: She is the guilty party, Judge, that is why she did not testify.

THE COURT: If that is your argument, okay."

■■ Where a defendant injects into his case his activities with others for the purpose of proving his innocence, failure to produce such a person as a witness is a proper subject for consideration. (*People v. Tervin* (1974), 23 Ill. App. 3d 409, 318 N.E.2d 656.) A reading of the court's statement as a whole does not indicate that the failure of Elisha Davis to testify was a substantial factor leading to Isaac's conviction. The State produced Officer Jones, who testified as an eyewitness to the occurrence. Officer Warner corroborated many details of Officer Jones' testimony.

During its case, the State had presented the testimony of Officer Jones that from outside the building he witnessed Isaac throw a bag of cocaine out of one of the windows into the front of the apartment. Officer Warner testified that when the police forced their way into the apartment, Isaac was by the front door. Canute Snulligan testified that Isaac was in the rear of the apartment behind locked burglar bars. Isaac contends that the following statements made by the trial judge during defense counsel's closing argument impermissibly placed the burden of proof on the defendant.

"THE COURT: Well, we have the testimony of Officer Warner that when they kicked in the door, sledge hammered it, Isaac was next to door.

MR. FRANKS: That was her testimony.

THE COURT: They broke in the back and they found another Snulligan and a female, Bernard. Bernard, Canute and then Elisha were in the back but Isaac was standing by the door. That is Officer Warner's testimony.

MR. FRANKS: Judge, I am standing approximately six feet from that wall. Again, I have been in that apartment. If you look from six feet away from that wall of that apartment—.

THE COURT: Why didn't you take some pictures?

MR. FRANKS: Judge, all I am doing is arguing.

THE COURT: Or a diagram?"

■ The defendant, Isaac Snulligan, argues that the judge's comments about the failure of defense counsel to produce a picture or a diagram of the apartment where the event occurred in effect imposed the burden of proof on Isaac rather than on the State. The preceding comments came during the final argument of Isaac's counsel while the judge was questioning the lawyer. Had the comments been made before a jury there may be some merit to Isaac's argument. However, this was a bench trial, not a jury trial. Nothing in the judge's comments indicates that the trial judge had concluded defendant's guilt or improperly imposed the burden of proof on the defendant.

In his last point Isaac Snulligan alleges that he was not proven guilty of delivery of a controlled substance beyond a reasonable doubt. Isaac asserts that the testimony offered by the State concerning the officer's ability to identify him as the man who sold drugs was improbable and contradicted by the physical evidence.

Isaac contends that his presence during an arrest in an apartment not his own where he was not in possession of marked money did not establish his guilt beyond a reasonable doubt. He maintains that Officer Jones' testimony was contradictory and unworthy of belief, and therefore there is a reasonable doubt that he participated in the alleged controlled drug purchase.

■■ ■ It is the function of the trial court as the trier of fact to evaluate the credibility of the witnesses, and its finding of guilty will be disturbed only where the evidence is so unreasonable, improbable or unsatisfactory as to leave a reasonable doubt as to the defendant's guilt. (*People v. Durley* (1972), 51 Ill. 2d 590, 593, 283 N.E.2d 882, 884.) In deciding whether the defendant abetted the commission of delivery of cocaine, the trial court is entitled to consider not only the defendant's presence at the scene of the crime, but also his failure to oppose or disapprove its commission and his close affiliation with others known by him to be involved in the crime. *People v. Schlig* (1983), 120 Ill. App. 3d 561, 570, 458 N.E.2d 551, 554.

■ In a bench trial the judge has the duty of determining the credibility of the witnesses and the weight to be given their testimony, and a reviewing court will not substitute its judgment for that of the trial judge. (*People v. Brisker* (1988), 169 Ill. App. 3d 1007, 523 N.E.2d 1191, *appeal denied* (1988), 122 Ill. 2d 580, 530 N.E.2d 251.) A reviewing court is bound to consider all the evidence in a light most favorable to the prosecution and then it must determine whether any rational trier of fact could have found defendant guilty beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) The credibility of the witnesses and the weight to be accorded their testimony are matters within the province of the trier of fact, and its determination is entitled to great weight. *People v. Jones* (1988), 174 Ill. App. 3d 737, 528 N.E.2d 1363.

Here, the discrepancies in the testimony of Officers Jones and Warner were not of major consideration where the evidence showed that these officers worked together in setting up a purchase of a controlled substance. Whether the hallway was lit or unlit, whether there was a slot in the hallway door or a hole where the doorknob had been, and whether the plastic bag of narcotics was blue or clear in color are not of significant importance where it is shown that there was a close affiliation between the persons in the apartment; that Officer Jones saw the defendant and his brother Bernard negotiate the sale at the apartment door; that when Officer Warner entered the premises, Isaac was behind the apartment door; and that both Isaac and Bernard were present at the scene of the crime which was corroborated by the presence of traces of tracer powder from the marked money on their hands and on their faces.

■ The testimony of one eyewitness is sufficient to support a conviction, provided the viewing of the accused was under such circumstances as would permit positive identification and the witness is credible; this is so even where the witnesses' testimony is contradicted by the accused. (*People v. Nightengale* (1988), 168 Ill. App. 3d 968, 523 N.E.2d 136.) It is for the trier of fact to determine credibility of witnesses and to accept or reject as much of the witnesses' testimony as it pleases, and a reviewing court will not substitute its judgment for that of the trier of fact on questions involving the credibility of witnesses. (*People v. Thurman* (1983), 120 Ill. App. 3d 975, 458 N.E.2d 1038, *aff'd in part & rev'd in part* (1984), 104 Ill. 2d 326, 472 N.E.2d 414.) During a bench trial it is the duty of the trial judge to determine the credibility of witnesses and the weight to be given their testimony, and where the evidence is merely conflicting, a reviewing court will not substitute its judgment for that of the trier of fact who

heard the evidence. (*People v. Davenport* (1988), 176 Ill. App. 3d 142, 530 N.E.2d 1118.) Here, the trial judge concluded that Officers Jones and Warner were the more credible witnesses. We find that there is ample evidence to establish the defendant's guilt.

For the foregoing reasons, we affirm the judgment of the circuit court.

Judgment affirmed.

COCCIA, P.J., and GORDON, J., concur.