THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS ANDERSON, Defendant-Appellant.

First District (2nd Division)   Nos. 1—90—0384, 1—90—0632 cons.

Opinion filed September 29, 1992.—Rehearing denied November 24, 1993.

Michael J. Pelletier and Pamela Z. O'Shea, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Michael Latz, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

Defendant, Thomas Anderson, who represented himself at trial, appeals from his conviction by a jury of armed robbery and aggravated battery on the grounds that the trial court: (1) violated his fifth amendment right to freedom from self-incrimination; (2) denied him a fair trial by interrupting his closing argument; (3) deprived him of an impartial trial by displaying hostility toward him; and (4) improperly considered evidence of a pending charge when sentencing him.

Defendant was charged by information with one count of armed robbery, two counts of aggravated battery and one count of armed violence in connection with the robbery of the Stop and Go grocery store at 12400 S. Normal in Chicago, Illinois. Subsequently, the State nol-prossed one count of aggravated battery and the armed violence count.

At trial, Mohammad Isa, the owner of the store at the time of the robbery, testified as follows. At about 9 a.m. on March 17, 1989, defendant, whom Isa had seen in the store on four or five previous occasions, entered the store. He brought two items to the counter, let a woman check out in front of him, and asked for some bandages which were located on a shelf behind the counter. After Isa got them for him, defendant asked for a different kind, which were located higher on the shelf. In order to reach the other bandages, Isa had to stand on a milk crate. When Isa turned around, defendant, who had stolen behind him, was holding a knife with a six-inch blade against his right side. Defendant told him not to move and pushed him up against the wall. Isa said that he didn't move because he felt the knife stick him and because defendant told him he had a gun. After defendant demanded money and Isa told him it was on the counter, defendant pushed Isa toward the cash register. Defendant picked up $60 to $70 from the counter, put it in his pocket and then asked for the money in the register. Isa told defendant that there was no money in the register, but opened it when defendant hit him on the arm with the knife. Defendant took approximately $60 to $65 from the register and left. Isa pushed the silent alarm to notify the police.

Walter Iverson, who was working for Isa at the time of the robbery, testified that when defendant, whom he had seen in the

neighborhood on at least four previous occasions, entered the store, he asked Iverson how much money the store made. Iverson replied that he did not know. Iverson's testimony generally corroborates Isa's account of the events except that he did not see defendant actually pull the knife on Isa, since he was closing the door at the time. In addition, Iverson testified that he saw defendant get into a black car and that he remembered part of the license plate number.

When the police arrived, Isa and Iverson each gave them a description of the robber. Isa was taken to the hospital and received two stitches in his arm; the small cut on his side did not require stitches. Approximately one week later, Isa. and Iverson picked defendant's photograph from an array brought to them by the police, and they both identified him in a lineup at the police station.

Defendant was convicted and sentenced to concurrent terms of 26 years for armed robbery and five years for aggravated battery. The circuit court denied defendant's motion for a new trial; defendant appeals.

## I

As a preliminary matter, we note that the right to self-representation does not give a defendant license to disregard the relevant rules of substantive and procedural law (*Faretta v. California* (1975), 422 U.S. 806, 834 n.46, 45 L. Ed. 2d 562, 581 n.46, 95 S. Ct. 2525, 2541 n.46), and that a defendant who represents himself is not entitled to favored treatment. *People v. Fowler* (1991), 222 Ill. App. 3d 157, 163; *People v. Amos* (1990), 204 Ill. App. 3d 75, 80-81, *appeal denied* (1991), 136 Ill. 2d 546.

Defendant's first contention of error is that the trial judge violated his fifth amendment right to freedom from self-incrimination by repeatedly telling him in front of the jury that he would have the opportunity to testify Before reaching the merits of this issue, we must determine whether defendant has waived it. Although defendant admits that he did not properly preserve this error for review by failing to object at trial and in his post-trial motion (*People v. Herrett* (1990), 137 Ill. 2d 195, 209), he urges us to review the issue as plain error. (107 Ill. 2d R. 615(a).) That rule allows a reviewing court to consider improperly preserved errors affecting substantial rights in two situations: (1) "where the evidence in a criminal case is closely balanced *** so as to preclude argument of the possibility that an innocent man may have been wrongly convicted," and (2) "where the error is so fundamental and of such magnitude that the accused was denied a fair trial," "[t]he rule [will be] invoked where it is necessary to preserve the integrity of the judicial process." (*Herrett*, 137 Ill. 2d

at 209-10.) Because our review of the record indicates that the evidence is not closely balanced, we will focus our analysis on the second part of the plain error rule. In *Herrett*, our supreme court held that although a prosecutor's errors in improperly commenting on the defendant's post-arrest silence and failure to testify at trial "involve[d] constitutional rights, they [were] not of such a character that the second prong of the plain error rule [had to] be invoked to preserve the integrity and reputation of the judicial process." (*Herrett*, 137 Ill. 2d at 215.) Regarding the comments on defendant's failure to testify; the court stated, "this court has held that an improper reference to the accused's failure to testify in his own behalf at trial is not an error that is so substantial that it deprives the accused of a fair and impartial trial. (*People v. Whitehead* (1987), 116 Ill. 2d 425, 448.)" *Herrett*, 137 Ill. 2d at 215.

Even assuming, as defendant urges us to do here, that he has not waived this argument because "a less rigid application of the rule requiring timely and proper objection and preservation of rulings thereon should prevail where the basis for the objection is the conduct of the trial judge" (*People v. Sprinkle* (1963), 27 Ill. 2d 398, 400-01; *People v. Mays* (1989), 188 Ill. App. 3d 974, 983), we cannot find in defendant's favor.

During defendant's cross-examination of Isa, the trial judge repeatedly instructed defendant not to testify while he was conducting his cross-examination. Four times, while admonishing defendant, the trial judge, in the presence of the jury; stated that defendant would have an opportunity to testify later. Defendant claims that the trial judge's remarks violated his rights "under the Fifth and Fourteenth Amendments to the Constitution." (U.S. Const., amends. V, XIV; *Griffin v. California* (1965), 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229.) In support of this position, defendant also cites the Illinois Constitution (Ill. Const. 1970, art. I, §§ 2, 10) and several Illinois cases, and he notes that this constitutional principle has been codified into Illinois law in section 6 of "An Act to revise the law in relation to criminal jurisprudence"[1] (Ill. Rev. Stat. 1989, ch. 38, par. 155—1).

The State responds that "a defendant's right to remain silent is not violated unless a reference to his failure to testify, whether direct or indirect, is intended to direct the jury's attention to the fact that

---

[1] "[A] defendant in any criminal case or proceeding shall only at his or her own request be deemed a competent witness, and the person's neglect to testify shall not create any presumption against the person, nor shall the court permit any reference or comment to be made to or upon such neglect." Ill. Rev. Stat. 1989, ch. 38, par. 155—1.

defendant chose not to exercise his right to testify." (*People v. Thomas* (1990), 137 Ill. 2d 500, 528, *cert. denied* (1991), 498 U.S. 1127, 112 L. Ed. 2d 1196, 111 S. Ct. 1092, citing *People v. Dixon* (1982), 91 Ill. 2d 346, 350.) However, defendant, in maintaining that the State's argument that intent is the relevant inquiry, relies on cases involving comments made only by prosecutors, and cites *People v. Crabtree* (1987), 162 Ill. App. 3d 632, in support of the proposition that intent is not dispositive in cases involving comments made by the court. In *Crabtree*, the trial judge told the defendant in the presence of the jury, "If you disagree with something you can take the stand and testify yourself." The reviewing court held, without any discussion of, or reference to, intent, that the trial judge's comments constituted error. *Crabtree*, 162 Ill. App. 3d at 634-36; see also *People v. King* (1972), 4 Ill. App. 3d 942, 944 (which holds that the trial judge's comment, that "Well, I think your client is here, he can—he is here to deny it, he can testify," was constitutional error).

■ We are not prepared to disregard the judge's intent in determining whether error occurred. Therefore, in examining the judge's comments in the context of the entire proceeding, as we must (*People v. Arman* (1989), 131 Ill. 2d 115, 126, *cert. denied* (1990), 494 U.S. 1018, 108 L. Ed. 2d 499, 110 S. Ct. 1324), it is evident that he was attempting to explain to defendant that he could not testify while he was cross-examining Isa, but that he would have to ask him questions. In addition, that the judge admonished defendant to avoid questioning a detective about the fact that defendant did not make a statement to him is inconsistent with the intent to call attention to defendant's failure to testify. However, it is not clear, as the State asserts, that the judge was relying on defendant's indication that he would testify when informing him that he would have the opportunity to do so later. Although defendant admits that when he was asked by the judge before trial whether he was planning to call any witnesses, he replied that he would have to take the stand because his subpoenas were not served, he claims that the judge should not have relied on his statement and that he did not have to decide whether or not he was going to testify until he rested his case. Furthermore, after the State had rested its case, standby counsel stated for the record that, when asked by defendant about the consequences of defendant's taking the stand, he informed defendant that the State would introduce a prior conviction and that it was defendant's decision as to whether or not to testify. The judge then asked defendant whether it was correct that it was his decision that he did not want to testify and defendant indicated that it was. Nevertheless, despite the possibly unfortunate effect of the judge's comments, which could

have been avoided by reminding defendant outside the presence of the jury or by not mentioning to him at all that he would have the opportunity to testify later, we cannot conclude that the judge intended to draw attention to defendant's failure to testify; therefore, we conclude that he did not commit error.

Even assuming that error had been committed and that it was exacerbated by the fact that it was committed by the judge, we consider it to have been harmless in light of the overwhelming evidence of defendant's guilt. (*Arman*, 131 Ill. 2d at 127; *Amos*, 204 Ill. App. 3d at 81.) Furthermore, we note that the judge instructed the jury during *voir dire* that defendant had the right to testify or not to testify, and that if he did not testify, the jury was not to consider that in deciding the case. In addition, the judge instructed the jury at the close of all of the evidence that:

"The fact that the defendant did not testify should not be considered by you in any way in arriving at your verdict."

Despite defendant's contention that any instructions given by the judge did not cure the error because they conflicted with the impression created by him that consideration of defendant's failure to testify was proper, we find that these instructions lessened the impact of any alleged error.

## II

Defendant's second contention of error is that the trial judge denied him his right to a fair trial by interrupting his closing argument. The alleged error occurred as follows:

"THE COURT: Thank you, Mr. Liebert. Mr. Anderson, you may address the jury in concluding argument. Your argument must be confined to the evidence and the reasonable—

CLOSING ARGUMENTS
BY MR. ANDERSON

The jury have seen this case and you deliberating on it and I hope you see all the facts in this case. Any inconsistency about the case, because my life is on the line here, any kind of doubt in your mind. Anything that you are not sure about in this case I will just want you to stand up and be—

THE COURT: Miss Shields, you may address the jury in rebuttal. Thank you, Mr. Anderson.

CLOSING ARGUMENTS
BY MS. SHIELDS

I don't know what exactly to rebut. As I said before ***."

Defendant claims that "the trial judge's immediate interruption and instruction to the prosecutor to address the jury in rebuttal *** amounted to a complete denial of [his] right to present a closing

argument." Alternatively, he argues, the judge's interruption constitutes an abuse of discretion.

■ Although in *Herring v. New York* (1975), 422 U.S. 853, 45 L. Ed. 2d 593, 95 S. Ct. 2550, the court recognized that "it has universally been held that counsel for the defense has a right to make a closing summation to the jury" (*Herring*, 422 U.S. at 858, 45 L. Ed. 2d at 598, 95 S. Ct. at 2553), and that *pro se* defendants have the same right as defense counsel to make closing arguments (*Herring*, 422 U.S. at 864 n.18, 45 L. Ed. 2d at 602 n.18, 95 S. Ct. at 2556 n.18), we are not persuaded that the judge interrupted defendant's closing argument. In support of this view, we note that although defendant did not hesitate to raise objections and spoke up to the judge on more than one occasion before and during the trial and at sentencing, he failed to object when he was allegedly cut off, a good indication that he did not consider his argument as truncated by the judge. This is especially true when we consider that defendant objected to almost every statement the prosecutor made in his closing argument. In addition, the length of his opening statement, which consisted of four sentences, is another indication that he may have been finished with his closing statement. We also note that the transcript of the trial judge's invitation to defendant to address the jury in closing argument, set forth above, has ellipsis marks similar to those employed at the end of defendant's summation to the jury, and no one is asserting that the judge was interrupted or cut off.

At any rate, because the record was not clear as to this matter, and in the interest of fairness to defendant, we ordered the circuit court to conduct a hearing "calling in the prosecutor, standby counsel, and the court reporter in this case, in order to determine whether or not the defendant herein was cut off or interrupted in making his closing argument," calling the court's attention to that part of the report of proceedings containing defendant's closing remarks, as set forth above. After holding such a hearing, the trial judge furnished this court with a supplemental record containing certified transcripts which show conclusively that defendant's contention that his closing argument was interrupted or terminated by the judge cannot be sustained.

## III

Defendant's third contention of error is that the trial judge denied him his right to a fair and impartial trial by displaying hostility toward him in front of the jury. The State maintains that the trial judge showed "extraordinary patience with defendant throughout his trial and that any comments by the court directed at defendant were provoked by defendant."

"A defendant's right to an unbiased, open-minded trier of fact is rooted in the constitutional guaranty of due process of law." (*People v. Johnson* (1990), 199 Ill. App. 3d 798, 806.)

"In protecting the defendant's right to a fair and impartial trial by jury in a criminal case the trial court must carefully avoid any remarks that indicate a prejudice toward either side.

'*** [J]urors are ever watchful of the attitude of the judge, and any disclosure of disbelief or hostility on his part is very apt to influence them in arriving at their verdict. [Citations.]' (*People v. Santucci* (1962), 24 Ill. 2d 93, 98.)" (*People v. Bartall* (1983), 98 Ill. 2d 294, 320.)

Further, "[a] judge should not show hostility or even impatience toward defense counsel." *People v. Partee* (1987), 157 Ill. App. 3d 231, 255, *appeal denied* (1987), 116 Ill. 2d 571, *cert. denied* (1988), 484 U.S. 1072, 98 L. Ed. 2d 1006, 108 S. Ct. 1043.

Defendant cites the following excerpts from the record in support of his position. During his cross-examination of Isa, when it was unclear whether or not a question was pending, the judge said to defendant, "Mr. Anderson, you have to ask a question, sir. You have to act like a lawyer." Later, in response to the State's objection to defendant's questioning of Isa about a police report, there was the following exchange:

"THE COURT: Mr. Anderson, the witness didn't see the car, and what's in the Police report is not relevant. You can't read from the report, sir.

MR. ANDERSON: I'm trying to wonder who seen the car or how did the car ever pop up in there. If the car was seen by a witness who seen the car?

THE COURT: Mr. Anderson, I don't know. I don't know anything about the case. You have to again conduct yourself as a lawyer."

When defendant questioned Isa about how long it took him to get home from the police station, the following exchange took place:

"THE COURT: [Objection] Sustained. That's not relevant Mr. Anderson.

MR. ANDERSON: All I'm trying to do is connect the facts of him being at the Police station.

MS. SHIELDS: Objection to what he's trying to do.

MR. ANDERSON: They're interviewing the line-up and then leaving and going home to Indiana and then calling me at least two o'clock that afternoon.

THE COURT: Mr. Anderson, you're talking about irrelevant materials.

Ladies and Gentlemen, disregard that. If you want to discuss

that with me outside the presence of the Jury you may, but you're not going to address the Jury. Again I admonish you, sir, you have a right to represent yourself. The Jury's been instructed with respect to that right, but you're to conduct yourself as a lawyer."

When defendant asked Isa what defendant did when defendant came into the store, the following exchange occurred:

"THE COURT: We've already heard this testimony. Mr. Anderson, I'm going to make you move on, sir. You're not going to stand in front of the trier of fact and do this.

MR. ANDERSON: I'll move on but I'll be back when I find some evidence.

THE COURT: You've got to conduct yourself in a lawyer like manner. That means expeditious and rapid and cogent with your questions.

MR. ANDERSON: Yes, sir.

THE COURT: Brief questions, understandable questions. I don't think that's unreasonable, sir. The Jury comes from all walks of life and all parts of this County. I'll ask the Sheriff please make sure the Jury's transported properly, transportation, and all of you will be given an opportunity if you need rides to this building.

MR. ANDERSON: We'll pick up where it just left off.

THE COURT: Mr. Anderson, I'm talking to the jury. To insure that you can leave this area safely and expeditiously. If necessary Mr. Anderson, I'll have Mr. Isa return here tomorrow.

MS. SHIELDS: Your Honor, we'd ask for a side-bar.

MR. ANDERSON: Yes. It's necessary, most necessary.

THE COURT: Only if the questions you ask are relevant.

MR. ANDERSON: Well, you give me time and I'll have plenty of relevant questions for you.

THE COURT: I've given you ample opportunity sir, ample opportunity. The case is on trial.

MR. ANDERSON: The case is on trial and I'm an innocent man and I'm fighting for my life here.

MR. LIEBERT: Objection.

THE COURT: Again, these matters should be discussed in a side bar. If you persist in making speeches, the Jury's instructed to disregard it.

MR. ANDERSON: So what are you saying? Should I continue?

THE COURT: Finish your examination Mr. Anderson."

When defendant began to explain why he had asked Isa a certain question, the State objected on the ground that defendant was testifying, and the court stated, "Mr. Anderson, why do you keep doing this? You'll have an opportunity to testify. My Lord, I've been reasonable. You can continue, but—." Finally, the following exchange

occurred after defendant asked Isa to explain his answer a second time:

"MS. SHIELDS: Objection.

THE COURT: Sustained.

A. You didn't hear what I said?

MR. ANDERSON: I just couldn't catch it because I feel that it's some discrepancies because if the money's in the center and cash register's in the center and he's keeping it on, in the back or do anything to get some band-aids—

MS. SHIELDS: Objection.

THE COURT: Mr. Anderson, you know, look. Really sometimes I want to ask why me and I don't want to. I'm not trying to be facetious.

MR. ANDERSON: If your life was on the line Your Honor, I figure you'd feel just as much as I feel.

THE COURT: I'll give you every opportunity to testify. Please stop making speeches to the Jury.

MR. ANDERSON: Well, I admit this is not my field.

MS. SHIELDS: I'd ask if the Defendant has something he wishes to address to the Judge, he ask[ed] for a side-bar.

THE COURT: Ladies and Gentlemen, the Defendant voluntarily chose to represent himself. He has a legal right to do that. The Supreme Court and the State of Illinois affords the defendant the right to represent himself.

Once again, I admonish you not to consider that. The Defendant has a right to voluntarily do that and I accepted his waiver of Counsel.

MR. ANDERSON: I want to say this.

THE COURT: I'm only asking you to please conduct yourself as a lawyer.

MR. ANDERSON: I want to say this: I gave the Public Defender every opportunity to represent me fair.

MS. SHIELDS: We'd object to him going on like this.

THE COURT: I'm going to recess this trial. It's 6:30. I've given Mr. Anderson every opportunity to question the witness. I'm very sorry Mr. Isa. You'll have to return here tomorrow for further questioning."

Defendant relies on the authority of *People v. Eckert* (1990), 194 Ill. App. 3d 667, *People v. Mays* (1989), 188 Ill. App. 3d 974, and *People v. Ferguson* (1973), 11 Ill. App. 3d 914. In *Eckert*, the court held that the cumulative effect of the judge's remarks which conveyed an impression to the jury that the defense counsel was not doing his job properly and was wasting the court's time, constituted reversible error. (*Eckert*, 194 Ill. App. 3d at 673-74.) Similarly, in *Mays*, the

reviewing court found that the judge's actions in slamming down his pencil, heaving a sigh, and making facial gestures were unnecessary and may have prejudiced defendant in the eyes of the jury. (*Mays*, 188 Ill. App. 3d at 983-85.) And, in *Ferguson*, the court found error where the court was impatient with the defense. *Ferguson*, 11 Ill. App. 3d at 917.

In contrast, the State relies on the authority of *People v. Brown* (1980), 87 Ill. App. 3d 368, 371, in which defense counsel attempted to interject argument during the State's closing argument. The trial court then admonished the parties:

> "Well, here is what the Court will say: If someone makes a statement who is not making an argument, the Court will hold that individual in contempt. The Court has previously stated for counsel to make statements when they are not making arguments is out of order."

According to the reviewing court, "[c]ounsel cannot by his conduct elicit such comments and then claim error on them. [Citations.] Moreover, when counsel is properly admonished by the court, the mere fact that such comments were directed at him does not demonstrate prejudice on the part of the court." (*Brown*, 87 Ill. App. 3d at 371.) The State contends, additionally, that the right to self-representation does not give a defendant license to disregard the relevant rules of substantive and procedural law. (*Faretta*, 422 U.S. at 834 n.46, 45 L. Ed. 2d at 581 n.46, 95 S. Ct. at 2541 n.46.) Accordingly, the State claims that the judge's remarks were not words of hostility, but rather, were proper instructions on how to comply with the rules of procedure. Similarly, the State notes that a trial judge does not abuse his discretion when his rulings "seek merely to eliminate confusion and curtail repetition." *People v. Hanley* (1977), 50 Ill. App. 3d 651, 656.

■ Although we acknowledge that the judge's remarks are subject to differing interpretations, we find that they were precipitated by defendant's inexperience and that the great majority of the remarks reflected his proper instruction of defendant. In any event, "in order for a trial judge's comments to constitute reversible error, a defendant must demonstrate that the comments constituted a material factor in the conviction or were such that an effect on the jury's verdict was the probable result." (*People v. Harris* (1988), 123 Ill. 2d 113, 137, *cert. denied sub nom. Wilson v. Illinois* (1988), 488 U.S. 902, 102 L. Ed. 2d 240, 109 S. Ct. 251; *People v. Snulligan* (1990), 204 Ill. App. 3d 110, 115; *People v. Velasco* (1989), 184 Ill. App. 3d 618, 640, *appeal denied* (1989), 127 Ill. 2d 637.) The evaluation of the effect of the court's statements must be made in light of evidence, the context

in which they were made and the circumstances of the trial. (*People v. Williams* (1991), 209 Ill. App. 3d 709, 719, *appeal denied* (1991), 139 Ill. 2d 604.) One such factor considered by the court in *Harris* was that at the close of all of the evidence, the jury was instructed that the court's rulings and remarks were not meant to indicate any opinion either on the facts or on what the verdict should be. *Harris*, 123 Ill. 2d at 139.

In this case, as the State points out, at the beginning of the second day of trial the judge admonished the jury:

> "Ladies and gentlemen, yesterday evening obviously the trial became somewhat laborious, and I want to admonish you that any gesture or remark which I have made made [*sic*] yesterday in no way is intended to indicate any opinion as to the facts as to what your verdict should be. You are to judge this case on the evidence and only the evidence."

Similarly; the judge instructed the jury:

> "Neither by these instructions nor by any ruling or remark which I have made do I mean to indicate any opinion as to the facts or as to what your verdict should be."

Further, we note that the judge admonished the jury several times as to defendant's right to represent himself. When viewed in the context of the entire proceeding, we cannot conclude that the judge's remarks constituted error or that they were a material factor in defendant's conviction.

## IV

■ Defendant's final contention of error is that the trial judge improperly considered a pending burglary charge when determining his sentence. However, the information upon which the judge relied in sentencing defendant appears to have been contained in a presentence investigation report which was ordered by him after the verdict was returned. "Any claimed deficiency or inaccuracy within a presentence report must first be brought to the attention of the sentencing court, and a failure to do so results in waiver of the issue on review." (*People v. Williams* (1992), 149 Ill. 2d 467, 493.) Because defendant failed to object to the veracity or reliability of the pending charge, he has waived this issue.

In any event, even assuming that error had occurred, "[r]emand for resentencing is not necessary where the record demonstrates that the weight placed on the improper sentencing factor was insignificant and did not result in a greater sentence." (*People v. Kendall* (1991), 213 Ill. App. 3d 782, 789, *appeal denied* (1991), 141 Ill. 2d 552, citing *People v. Bourke* (1983), 96 Ill. 2d 327, 333; see also *People v. Wallace* (1986), 145 Ill. App. 3d 247, 256.) Considering defendant's

four prior convictions, including one for attempted robbery and two for robbery, we conclude that the circumstance that the judge made mention of a pending charge was insignificant and did not result in a greater sentence. Accordingly, we decline to remand for resentencing.

For all of the above-stated reasons, we affirm the decision of the circuit court.

Affirmed.

DiVITO and McCORMICK, JJ., concur.