35 F.3d 568
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Jerry L. BELL, Petitioner-Appellant,
v.
Paul J. KLINCAR, Respondent-Appellee.
 No. 93-3903.
 United States Court of Appeals, Seventh Circuit.
 Argued and Decided Aug. 3, 1994.
Issued Sept. 6, 1994.
 
 Before POSNER, Chief Judge, and BAUER and KANNE, Circuit Judges.
 
 
 1
 Petitioner, a state prisoner,[1] appeals from the denial of his petition for a writ of habeas corpus, 28 U.S.C. Sec. 2254, alleging that he was not proved guilty beyond a reasonable doubt of unlawful delivery of a controlled substance, and that he was denied the effective assistance of counsel when his attorney did not call certain witnesses, and did not move to suppress petitioner's admission of his residency at the drug house.
 
 Ineffective Assistance of Counsel
 
 2
 In order to establish a claim of ineffective assistance of counsel, it is necessary to show that counsel's representation fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). There is a preference for analyzing prejudice before deficient performance. Strickland, 466 U.S. at 697 ("In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant"). In order to show prejudice, petitioner must establish that the alleged errors by counsel "rendered the result ... unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 113 S.Ct. 838, 844 (1993). Petitioner here has failed to satisfy the prejudice component of the Strickland ineffective assistance test.
 
 
 3
 Petitioner argues that his attorney was negligent in failing to move to suppress petitioner's statement to the police that he lived at the second floor flat. Even if it was negligence, no prejudice could result from this omission because several Elgin police officers testified that they were familiar with petitioner and knew he had lived in that house for some time.
 
 
 4
 Petitioner argues that counsel should have called petitioner's sister, Dorothy Bell, as a witness, because she would have exonerated him.[2] Again, even if counsel erred in not calling Dorothy Bell, no prejudice could have resulted, in view of the overwhelming evidence against petitioner and Dorothy Bell's incredible statement that she would testify that her brother knew nothing about the drug operation.
 
 
 5
 The evidence at trial shows that two undercover drug purchases took place at a building known by police to be petitioner's residence, one only minutes before the warrant was executed. Mark Padilla, a state narcotics investigator, went to a two-story home in Elgin, Illinois to make a controlled drug buy. As he walked up the exterior staircase to the second floor, he noticed a closed circuit camera above the door and burglar gates across the door. In his experience, such devices were used to deter the police. Padilla then bought less than one gram of cocaine by speaking with a woman through the mailbox slot.
 
 
 6
 Two days later, Padilla returned to the home to make a second buy. He again spoke with someone through the mailbox, and again handed through $100 and bought less than one gram of cocaine. The serial numbers on the money had been prerecorded, and the money had been marked with trace powder, which shows up under an ultraviolet light. Padilla returned to the nearby location where police officers were waiting with a search warrant.
 
 
 7
 Within eight minutes, the officers went to the second floor doorway, knocked repeatedly, announcing their office. After no response, they broke down the door. The house was set up as a fortress; along with closed circuit television cameras, there were burglar bars, three inside locks and a four-inch bar across the door. It took five or ten minutes to break down the door. When the police entered the apartment, they found 12 people. Craig Bell, petitioner's brother, was urinating into the toilet, which contained white powder. Petitioner was sitting on the living room couch. He admitted to the officers that it was his home. An examination of each person revealed that only petitioner and his sister, Dorothy Bell, had trace powder on their hands. Petitioner had the $100 marked money, along with an additional $996, in his pants pocket.
 
 
 8
 Given this evidence that clearly establishes petitioner's participation in and knowledge of the extensive drug operation in his own home, Dorothy's testimony that her brother was innocent would have carried little, if any, weight at trial. Moreover, it is reasonable to believe that Dorothy's criminal history, and her plea agreement that resulted in the dismissal of charges (in return for her pleading guilty in another case), would have destroyed her credibility. We conclude that, even if the performance of counsel had been deficient, the failure to call Dorothy Bell as a witness did not render the result of the trial unreliable or the proceeding fundamentally unfair.
 
 Sufficiency of the Evidence
 
 9
 Under the same facts recited above, we find that the evidence establishing that petitioner was guilty of unlawful delivery of a controlled substance based on an accountability theory, see Ill.Rev.Stat., ch. 56 1/2, par. 1401(c) (1988) (now codified at 720 ILCS 570/401), People v. Rendon, 238 Ill.App.3d 135, 606 N.E.2d 85 (1992), was sufficient to prove him guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324 (1979). See, e.g., People v. Goodman, 81 Ill.2d 278, 284, 408 N.E.2d 215 (1980) (affirming conviction for unlawful delivery of controlled substance where the police found the marked money on defendant after the transaction); People v. Braden, 34 Ill.2d 516, 216 N.E.2d 808 (1966) (affirming conviction for unlawful sale of narcotics where marked money was found in defendant's shirt hanging in closet, defendant was present in apartment during unlawful sale, and marijuana was found in refrigerator); People v. Morrison, 23 Ill.2d 201, 177 N.E.2d 833 (1961) (affirming conviction for unlawful sale of narcotics where defendant and his wife were in possession of marked money); People v. Kabakovich, 245 Ill.App.3d 943, 615 N.E.2d 855 (1993) (affirming conviction for unlawful delivery of controlled substance where the police found the marked money in area under defendant's control, defendant was present each time drugs were bought, and defendant drove buyer to house where drugs were sold); People v. Snulligan, 204 Ill.App.3d 110, 561 N.E.2d 1125 (1990) (affirming conviction for unlawful delivery of controlled substance where police saw defendant and his brother negotiate sale of narcotics at apartment door and defendant had tracer powder from marked money on his hands and face).
 
 
 10
 For these reasons, we AFFIRM the denial of the petition for writ of habeas corpus.
 
 
 
 [1]
 Following a bench trial in 1988, an Illinois court found defendant guilty of the unlawful delivery of a controlled substance. The conviction was affirmed by the Illinois Appellate Court in an unpublished opinion, People v. Bell, No. 2-89-0004 (Ill.App., filed. April 9, 1990). The Illinois Supreme Court denied a petition for leave to appeal
 
 
 [2]
 While there are two contradictory affidavits (one by counsel stating that petitioner encouraged him and Bell to participate in perjury, and one by petitioner accusing counsel of being a liar), we need not address whether a genuine issue of material fact is raised by these affidavits because we limit our discussion to the prejudice prong of Strickland, assuming for the sake of our analysis that counsel's performance was deficient